R. McGREGOR ET AL. v. EQUITABLE GAS CO.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 4, 1887—Decided January 5, 1891.
[To be reported.]

1. An entry upon land, by virtue of the right of eminent domain, confers a right to have the surface supported by the subjacent strata; but the commonwealth's grantee is not bound to include this servitude in the

Statement of Facts.

easement appropriated, and if the landowner be released from its bur-
den, it cannot be considered in assessing the damages: Penn Coal Co.
v. Gas Co., 131 Pa. 522.

2. A release of such servitude may be filed upon the trial in court of a
proceeding to assess damages for the appropriation, when it is not made
to appear that the landowner was misled to his injury by the delay in
filing it; and, when so filed, it will be effective to relieve the corporation
making the appropriation from liability to pay for the servitude.

3. When a natural gas company has appropriated an easement for the
construction of a gas line across coal land, excluding therefrom the
servitude of subjacent support, the danger of the escape of gas into the
mine, in consequence of subsidence of the surface when the coal is
removed, is not a subject of compensation in assessing damages for
the appropriation, a remedy being provided in §§ 10, 12, act of May 29,
1885, P. L. 29.

4. The measure of damages for such an appropriation is, first, the actual
damage done to the surface in the construction of the line, including
injury to fences and crops; second, the depreciation in the value of the
farm, as a whole, by the entry and appropriation of the gas company,
excluding from consideration all servitude of the coal to the surface,
and all dangers that might result from negligence.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 167 October Term 1890, Sup. Ct.; court below, No. 286
July Term 1889, C. P. No. 2.

On May 25, 1889, Robert McGregor, and John Peterman
and Nancy, his wife, in right of said Nancy, presented their
petition for the appointment of viewers to assess the damages
payable by reason of the location and construction of a pipe
line, for the conveyance of natural gas, by the Equitable Gas
Company, upon and through certain lands of Robert McGregor
and Nancy Peterman. The gas company, by filing a bond in
court on May 14, 1889, had appropriated for its said pipe line,
a strip of ground ten feet wide, part of which was underlaid
with coal. The greater part of this appropriation was with-
in the lines of a public road crossing the land of the petitioners.
In May, 1889, the gas company laid its pipe line, thirty inches
in diameter, at a depth of about six feet below the surface.
The coal was at an average depth of 23 feet below the pipe
line, the greatest depth being 33.1 feet, the crop line being
crossed by the pipe on each side of the coal field. Viewers
having been appointed, as prayed for in the petition, and hav-

Statement of Facts.

ing reported an award of $750 damages, both the petitioners and the gas company appealed, and an issue was framed, the landowners being made the plaintiffs and the gas company the defendants.

The issue was called for trial on April 23, 1890, when, after the jury was sworn but before the case was opened, the defendant company presented and asked leave to file a release under seal, dated April 9, 1890, providing:

" Know all men by these presents : That the Equitable Gas Company, a corporation organized and doing business under the laws of the state of Pennsylvania, for and in consideration of the sum of one dollar to it in hand paid, the receipt whereof is hereby acknowledged, as well as for other good and valuable considerations to it moving, has remised, released, quit-claimed and forever discharged, and by these presents for itself, its successors and assigns, does remise, release, quit-claim and forever discharge the said Robert McGregor, John Peterman and Nancy Peterman, in right of said Nancy, their heirs, executors, administrators and every of them, of and from all manner of action and actions, cause and causes of action or actions, suits, debts, dues, duties, sums of money, damages, claims and demands whatsoever, in equity, law or otherwise howsoever, which the said Equitable Gas Company may have had, now have, or which it, its successors and assigns, hereafter, could, shall or may have, by reason of the subsidence of its said pipe line, or any injury or damage thereto, by reason of the mining and removal of any or all of the coal underlying the property of the said Robert McGregor, John Peterman and Nancy Peterman, through and over which the pipe line of the said Equitable Gas Company passes; and the said Equitable Gas Company hereby accepts all risk of damage and subsidence of the said line by reason of the mining and removal of the said coal.

" In witness whereof," etc.

The filing of this paper was objected to by the plaintiffs. By the court : Stipulation ordered to be filed; exception.[4]

The plaintiffs in their case in chief, offered to show by Selwyn Taylor the amount of coal which it would be necessary to leave unmined in order to support the pipe line through the plaintiffs' lands.

Objected to.

By the court: Under the stipulation filed, I sustain the objection; exception.[5]

A number of witnesses having testified, upon each side of the case, as to the effect of the pipe line upon the value of the plaintiffs' land, the court, WHITE, J., charged the jury:

The court is asked by the plaintiffs to charge the jury:

1. The appropriation made by the defendant of plaintiffs' land, on May 14, 1889, when bond was filed and approved by this court, included, not only the surface of the same, but such coal and underlying strata as was necessary to support the surface appropriated by it; and the defendant having entered upon, used and enjoyed said land under such appropriation, it is estopped from changing the character of said appropriation at the time of trial of the cause, so as to limit its liability for damages.

Answer: There is no evidence of any change in the location. The release filed by the defendant company as to any support of the line from coal, and agreeing that the plaintiffs may mine out the same, etc., is not a change of location or appropriation, but is merely relinquishing a claim which might possibly arise in the future. The point is therefore refused.[1]

3. The probable length of time the gas line may remain in place, and the possible danger from its use, are elements that enter into the calculation of the damages, to the extent that they may affect the market value of the estate of plaintiffs.

Answer: The true measure of damages is, (1) the actual damage done in the construction of the line; and (2) the depreciation in value as a whole of the farm, by reason of the right of way; that is, the right to maintain and keep in repair the line as long as it may be needed, along the public highway, or five feet wide on either side of the pipe, excluding from consideration any damages that may possibly result from the negligence of the company in not keeping their line safe from leakage of gas.[2]

4. The character of the gas line put upon the surface, the use to which it is devoted, the depth below the surface at which the vein of coal is found, and the geological formation, are circumstances to be taken into account in determining the amount

of support needed, and the amount which plaintiffs are entitled to recover.

Answer: Refused.[3]

—After some general instructions, the court proceeded:

[A good deal has been intimated, during the trial, about the loss of the coal. Counsel for the plaintiff offered evidence bearing on that question and presented certain points for the court to instruct you upon. It is the duty of counsel to present any question they think involved in a case, and the duty of the court to answer. It is the duty of the jury to take the law as laid down by the court, and they are bound by it. If I am wrong, counsel can correct me in a higher court. The defendant company has filed a stipulation in this case, releasing the plaintiffs, and their heirs and assigns, from all possible claim for damages in consequence of taking out this coal. It may be true, to a certain extent, that where a pipe line is laid over a man's farm underlaid with coal, the pipe line company is entitled to some support for their pipe. So it is with a public road passing through a man's farm. The owner could not excavate the coal, and destroy the public road or make it dangerous to the public; and yet we hardly imagine that the owner of the land is bound to leave several rods in width for an ordinary public road. There would be some accommodation, no doubt, in cases of that kind, because, where there are two different rights in the same matter, the courts will generally find some way of giving effect to both rights. The plaintiffs, in this case, their heirs, assigns or vendees, have a right to take out all the coal under this pipe line, without regard to how it may affect the pipe line. The pipe line has relinquished all claim to any support for their pipe. It is suggested that there may be leaks and danger in taking out the coal. The company, by relinquishing that right, must make that right effective, and if the coal was being taken out, and there was danger of the pipe line breaking, and resulting in a leakage, the owner of the coal could come into this court, under this act of assembly, which gives the court power in such a case, and upon his request, this court would require the pipe line company to do whatever was necessary to guard against accidents. That is one of the special provisions of the act. Hence, I have excluded all this evidence, on the ground that the company must make their re-

lease effective, must do what is necessary to enable the owners of the coal to take it out; and, further than that, they are liable, under this act of assembly, for all damages that may result from their negligence. If they negligently permit their pipes to leak and injure the crops of the farmer, or to injure any person in any way, they are liable in a special action. That is why that cannot be taken into account in this proceeding for the right of way, because the jury would have to guess at it.] [6] . . . . .

The jury returned a verdict in favor of the plaintiffs for $250. A rule for a new trial having been discharged and judgment entered, the plaintiffs took this appeal, assigning for error:

1–3. The answers to plaintiffs' points.[1 to 3]

4. The order allowing the defendant's release to be filed.[4]

5. The refusal of plaintiffs' offer.[5]

6. The portion of the charge embraced in [ ] [6]

*Mr. A. J. Barton* (with him *Mr. L. C. Barton*), for the appellants:

1. The appropriation made by the gas company, on May 14, 1889, took from the owners, not only an easement in the surface strip of ground ten feet in width, but also the right to support that surface by the underlying coal, or so much thereof as would be needful for that purpose: Penn Coal Co. v. Gas Co., 131 Pa. 532. When the security was entered, those rights passed from the landowners to the gas company: McClinton v. Railroad Co., 66 Pa. 407; Fries v. Railroad & M. Co., 85 Pa. 75. The appropriation having been made, and having been followed by the entry of the gas company upon the land, and its enjoyment of the easement, the rights of the parties were fixed, and the stipulation filed at the trial could not alter them. The court put the company in the same position as though it had filed such a stipulation at the time of making the appropriation and prior to its entry, thus substantially holding that it had an option, extending over the eleven months that intervened between the appropriation and the trial, as to whether it would or would not take the right of support.

Arguments.

2. Suppose, prior to the trial the plaintiffs had sold the land or the coal. The purchaser would have taken subject to the burden of surface support, and the loss resulting therefrom would have fallen on the plaintiffs in a lessening of the price paid, for which loss they would have been told to look to the bond filed. In such a case, to allow such a stipulation, filed upon the trial, to have the effect given to this one, would be to take private property from the plaintiffs without compensation, and give it to the purchaser without consideration. Again; suppose we had attempted, before the trial, to remove the coal beneath the pipe line: undoubtedly the court would have restrained us; and thus, until the company's election was exercised, we were deprived of the use of our property without compensation. The effect given to the release, by the court below, is not sustained by the opinion of this court in Penn Coal Co. v. Gas Co., 131 Pa. 522. In that case, no lawful appropriation had been made at the time of the decision. The second, third and fifth assignments all relate to matters considered in the case just cited, and should be sustained.

*Mr. George P. Graver* (with him *Mr. D. T. Watson*), for the appellee:

Penn Coal Co. v. Gas Co., 131 Pa. 522, is decisive of the question raised in the present case. In the case cited, the decree of this court authorized the filing of a stipulation, releasing the right to subjacent support, although the gas company was then in the occupancy of the surface. If the rule thus established is to stand, the railroad cases relied on by the appellant are inapplicable to gas-line cases. There is a manifest distinction. Those were all cases of appropriation and actual occupation of the surface, producing an immediate injury to the landowner. The underlying coal was necessary to the support of the railroad, and human life would have been risked by its removal. In our case, the coal is entirely unnecessary to our easement, was not intended to be taken for support, and was not designated in our bond. Are we to have forced upon us, and be compelled to pay for, something that we do not want? The release given in this case relieves the plaintiffs from all injury. The coal for which they are seeking compensation is under a township road, and for that reason could not be mined

Opinion of the Court.

Minor changes in a location, which experience or change of circumstances have shown to be necessary or desirable, may be made after an appropriation under the right of eminent domain : Mills on Em. Dom., § 258. As to the supposed danger to the coal from leaking gas, a complete and adequate remedy is furnished by § 12, act of May 29, 1885, P. L. 29.

OPINION, MR. JUSTICE WILLIAMS :

An entry upon land made by virtue of the right of eminent domain confers a right to the surface supported by the subjacent strata. The grantee of the commonwealth may insist on the full measure of support which the law gives him, but it does not follow that he must do so because he can. He must pay for what he takes, but he ought not to be compelled to take and pay for what he does not need, nor to inflict an injury on the owner of the land merely because he has the power to do so. He may, on the contrary, and a proper regard for the rights of others requires that he should, consider and determine, in view of the nature and uses of the structure he is about to put on the lands of the owner, what support he really needs, and release the owner from so much of the burden which his entry imposes as is not necessary for the security of his undertaking. If he does not do this, he ought to pay, not the value of the coal in place, for the title to the coal does not pass to him, but the depreciation in price of the property by reason of the servitude imposed upon it. If he does release the right of support from the coal or other mineral underlying the surface, then the owner may mine and remove it as freely and fully as though no entry had been made upon the surface, and for that reason it should not be taken into consideration in adjusting the damages due to the landowner. This was decided in the recent case of Penn Coal Co. v. Gas Co., 131 Pa. 522.

But the appellant urges that the failure to file a release, at the time of filing the bond to secure the damages, estops the company from filing it at any later stage of the proceedings, and that it was therefore error in the court below to permit it to be filed on the trial. An estoppel ordinarily arises where one person has done or said that which has influenced another in such way as to make it inequitable to change or recall what was so said or done. The evidence does not show that the ap-

Opinion of the Court.

pellant was misled to his harm by the delay in filing the release. Its only effect, so far as we can discover, was to narrow the contest before the jury to the damages sustained upon the surface. The appellant, assuming that the company desired the support of the surface by the coal, which was from twenty to thirty feet below it, claimed that the coal should be taken into the account. The company replied to this part of the demand with the release of the coal from the servitude. This left the appellant as free to mine his coal as though the surface had not been entered upon, and extinguished all claim for damages growing out of the assumed purpose to require subjacent support. There was no error, therefore, in permitting the release to be filed at the trial.

It is now contended, however, that, if the release was properly filed, the danger of the subsidence of the surface after the removal of the coal, the breakage of the pipe line thereby, and the escape of an explosive gas into the mine, is so great as greatly to diminish the value of the coal, and that this is a proper subject of compensation in the assessment of damages. But this overlooks two provisions of the act of May 29, 1885; one, in the tenth section, which makes gas companies liable for all damages arising from negligence in the construction or maintenance of their lines; and another in the twelfth section, which gives the courts power to decide all disputes "as to the manner of laying the pipes, and the character thereof with respect to safety," upon the petition of any party affected, and provides for the enforcement of the order or decree by injunction. When the owner of the coal desires to remove any considerable portion of that which is under the line, he may apply to the court for such order as may be necessary to provide for the support of the line. After a full hearing, the court may "define, by its decree, what precautions, if any, shall be taken in the laying of pipes" for the safety of those then for the first time in a position to be affected. Natural gas can be transported only when the pressure at the wells is so great as to propel it through the lines by which it is delivered to the consumer. It must furnish its own motive power. It is a well-known fact that the pressure of most, if not all producing wells is steadily diminishing. Some pipe lines have already been taken up, because of the failure of gas in the wells that sup-

plied them.    Other lines must soon follow for the same reason, and it is not improbable that the Equitable Gas Company may have no gas to transport by the time the owner will be ready to remove the coal that is now under the line.    If the supply of gas does not fail by that time, and precautions that have not been taken become necessary for the safety of those engaged in mining, the power of the court may be invoked, all the circumstances submitted to its consideration, and such order made and enforced as security for persons and property may require.

The second and third assignments relate to the measure of damages.    The learned judge instructed the jury that the plaintiffs were entitled to recover, (*a*) the actual damages done in the construction of the line to the surface, including injury to fences and crops ;  (*b*) the depreciation in value of the farm, as a whole, by the entry and appropriation of the gas company, excluding from consideration all servitude of the coal to the surface, and all damages that might result from negligence on the part of the company.    This was a correct and a clear statement of the measure of damages, of which neither party can complain.    The character of the gas line put upon the surface, the use to which the line was devoted, and the probable length of time the line might remain in place, were elements entering into the calculation of the depreciation of the farm in value, and were to be considered in that connection only.    None of the assignments of error are sustained, and the judgment is now

Affirmed.

Mr. Justice STERRETT noted his dissent.

