## Denniston *v.* Philadelphia Company, Appellant.

|161    41|
|195   107|
161        41
20 SC ¹593

161        41
21 SC    22

161        41
22 SC ¹298
161        41
31 SC ¹378

*Eminent domain—Pipe line for gas.*

The inconvenience and injury caused by the location of a properly constructed and carefully operated pipe line may be considered in a proceeding for the assessment of damages to the land through which it passes, but such as are produced by the negligent construction and operation of the pipe line cannot be considered in such a proceeding.

*Pipe line—Negligence—Leakage—Evidence.*

In a proceeding to assess damages for injuries resulting from the construction of a pipe line for gas, evidence that leakage of gas from the pipe line had destroyed a spring, and injured vegetation, is not proper for the consideration of the jury, where there is nothing to show whether the leakage was the natural and ordinary consequence of the location and construction of the line, or was the result of the company's negligence in constructing and operating the line.

*Evidence—Cross-examination—Defence.*

Matters of defence cannot be introduced on the cross-examination of plaintiff's witnesses.

Argued Oct. 18, 1893.  Appeal, No. 182, Jan. T., 1893, by defendant, from judgment of C. P. Washington Co., Nov. T., 1892, No. 476, on verdict for plaintiffs, William and Thomas Denniston.  Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.  Reversed.

Appeal from report of viewers awarding damages for construction of pipe line for gas.  Before McILVAINE, P. J.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were, (1) in permitting Joseph Estep to testify as to amount of depreciation of farm; (2) in permitting W. F. Morrison to testify as to the places and character of leaks in pipe line and as to effect on grass, etc., quoting bills of exceptions and evidence; (3) as stated in the opinion of the Supreme Court.

*A. M. Todd, J. A. Wiley* with him, for appellant.—The point of time at which damages must be estimated for the taking and occupancy of land under the right of eminent domain, is imme-

diately after said land has been appropriated and used: Schuyl-
kill Navigation Co. v. Thoburn, 7 S. & R. 411.

Defendant's testimony established the fact that the recent
leaks were accidental and that it was the intention of the com-
pany to repair them as speedily as possible.   Plaintiffs submit-
ted no evidence to show that such leaks were the natural and
probable results of the proper operation of the line; on the other
hand, defendant, assuming a burden not properly resting upon
it, showed they were not.

*Boyd Crumrine, Thomas M. Marshall, Sr.,* and *E. E. Crum-
rine* with him, for appellees.—In the construction of railroads,
canals and turnpikes, or in the taking of land for public build-
ings, etc., under the right of eminent domain, compensation can
be as well ascertained the next week after the improvement is
constructed as years afterward.   But not so with oil lines and
gas lines.   Time may necessarily be required to develop dangers
and injuries, in certain instances, even when no negligence can
be alleged or is admitted.

In Pittsburg South. Ry. v. Reed, 5 Cent. R. 862, a witness,
living twenty miles from the land in controversy, who had been
on the land but once, and that two or three years after the rail-
road was first operated, to examine it with the view of becom-
ing a purchaser, and had a general knowledge of values in the
country, was offered by the claimant to prove depreciation.
The admission of the offer was affirmed in this court.

The witnesses, whether they testify to the manner in which
the value is affected or not, are to be permitted to testify as to
what they have seen upon the land, whenever they made their
examination, so far as what they have seen may have reference
to the manner in which the improvement has affected the prop-
erty, subject to a restriction by the court excluding from pre-
sentation anything, as a distinctive element of damage,—that
is, anything for which a certain sum should be allowed for dam-
age,—arising out of a distinct act or acts of negligence on the
part of the company: R. R. v. Madell, 1 W. N. 287; Western
Penna. R. R. v. Hill, 56 Pa. 460.

It is true, that the damages to be allowed by the jury as
compensation for the appropriation of the easement are to be
estimated as of the time of the appropriation, by the fixed rule

of the difference between the market values immediately before and immediately after the appropriation, as in the leading case of Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411. But that case by no means decides that a witness, to entitle him to state his opinion as to values at the time of the appropriation, may not testify to what he has seen upon the land at any time he examined it for the purpose, if otherwise competent and admissible.

The court did not permit our witnesses, nor the jury, to consider matters or conditions which might have resulted from negligence, although proof that any conditions testified to were the result of mere negligence was wanting in the case. The conditions complained of, that were testified to, may be inferred to have been simply the result of the manner in which defendant, in the discretion of its board of directors unrestricted by any statutory provisions in its charter, had laid its line : Gilmore v. R. R., 104 Pa. 275 ; Ry. v. McCloskey, 110 Pa. 436 ; Curtin v. R. R., 135 Pa. 20 ; Chambers v. South Chester Boro., 140 Pa. 510.

Ordinary dangers from accidental fires to the fences, fields and farm buildings are to be considered: Ry. v. McCloskey, 110 Pa. 436 ; R. R. v. Yeiser, 8 Pa. 366.

In Davis v. Gas Co., 147 Pa. 130, the claimant proposed to show the danger of gas escaping into plaintiff's mine beneath the surface wherein the line was laid. The court refused the offer. On appeal, it was held that the offer as made was competent and relevant.

In Wallace v. Gas Co., 147 Pa. 205, the question of danger from the probability of a pipe line breaking when the coal beneath it should be removed was considered, but it was ruled by this court that the testimony was insufficient to show that such a break would probably occur, and was therefore merely speculative. In our case, however, it was shown cumulatively that breaks or leaks had occurred, and their effects, including the danger to the fields and farm buildings.

OPINION BY MR. JUSTICE McCOLLUM, April 9, 1894:

The defendant company has the power of eminent domain for the purposes for which it was incorporated. In the exercise of this power it entered upon the plaintiff's farm and dug a ditch

there about one hundred and twenty-four rods long, from thirty to thirty-six inches wide and about forty inches deep. In this ditch it placed and covered a wrought iron pipe twenty inches in diameter, and in so doing raised the dirt over the pipe from ten to fifteen inches above the natural surface of the ground. The pipe so laid constituted a part of the company's large main for the conveyance of gas from its wells in the Linden field to the city of Pittsburg. About a year after the pipe was laid through their farm the plaintiffs commenced proceedings for the recovery of the damages they sustained by the company's appropriation of a part of it, in the manner and for the purpose already referred to. The principal inquiry on the trial of the case in the court below was how much, if any, was the market value of their farm reduced by such appropriation. To enable the jury to answer this question intelligently it was proper to introduce evidence showing how the farm was affected by the location and construction of the pipe line upon it. It appeared from the evidence submitted for this purpose that the most serious injuries complained of, such as the destruction of the grass and other crops along and on both sides of the line and of a valuable spring in the vicinity of it, were traceable directly to leaks in the main. The evidence, however, did not furnish any basis for determining whether the leakage was attributable to the negligence of the company in the construction and care of its line, or came in spite of the employment of the best known skill and appliances to prevent it ; but it is clear that the leakage and its consequences were taken into consideration by the jury in forming an opinion in respect to the depreciation of the market value of the farm by reason of the location of the pipe line upon it. One half of Joseph Estep's estimate of the depreciation was based on the leakage, and two thirds of the estimates of the same by Joseph Pierce and W. F. Morrison rested upon it. Indeed, it is apparent that the estimates made by most of the plaintiffs' witnesses were materially affected by the leakage which they discovered on their examination of the line a year or more after its completion. As these estimates and the evidence on which they were formed were for the consideration and assistance of the jury in ascertaining the depreciation in the market value of the farm, it is probable that the verdict was affected quite as much by the leakage and its consequences as the opinions of the witnesses were. It could not well be

otherwise, because although the learned court instructed the jury that injuries to the property resulting from a negligent operation of the line could not be considered in a proceeding for the assessment of damages occasioned by the location and construction of it, the evidence descriptive of the leakage failed to assign the cause of it. Was the leakage shown by the evidence consistent with skill in the construction and care in the operation of the line, or was it due to the negligence of the company in both, or either? A satisfactory answer to this question must have something more substantial to support it than conjecture, it must be founded upon evidence. If the leakage was the result of negligence, it was not an element to be considered in this issue. Hence there should have been evidence in the case which would have enabled the jury to find the cause of it; but there was none. To the extent therefore that the verdict was founded upon the evidence of the leakage and its effects it was a mere guess.

In obtaining, transporting and distributing the product of the gas fields, skill and care are required in order to minimize the risks to persons and property incident to the business. The inconveniences and injuries caused by the location of a skillfully constructed and carefully operated pipe line may be considered in a proceeding for the assessment of damages to the land through which it passes, but such as are produced by the careless construction and operation of it cannot be. The former are the natural and ordinary consequences of the location, construction and use of the line, and terminate only with the abandonment of it, while the latter are exceptional and may be prevented by the use of the best known appliances and skill and the observance of due care in the prosecution of the business, and they constitute an independent cause of action.

In this case the plaintiffs were entitled to be compensated for the depreciation in the market value of their farm, due to the location and construction of the pipe line, but not for injuries caused by the negligent operation of it. In considering their claim we must not lose sight of the fact that their right to damages accrued on the location and construction of the line, and that it was in no sense enlarged or abridged by subsequent occurrences. Nor did their delay in the enforcement of their right affect in any degree the amount of the damages recoverable on account of the appropriation of the land. We must

therefore regard the case as if they had brought and tried it before there was any leakage of gas along the line. If they had done so, would they have been permitted to show that there might be a leakage which would render useless a strip of land from thirty to fifty feet in width along the entire line and destroy a valuable spring in the neighborhood of it? We think not, unless it appeared that such would be the natural and ordinary result of the appropriation.

It is of the first importance to the parties that the evidence in cases of this nature should be restricted to matters proper for consideration in ascertaining the depreciation in the market value of the land. Matters which may be so considered must be introduced, if at all, on the trial of the action for damages caused by the location and construction of the line, because the landowner cannot be compensated for them in a subsequent suit. An injury which is or may be produced by negligence in the operation or care of the line is not such a matter. It may be that the leakage complained of in the case before us was due to the company's negligence and that a continuance of it may be prevented by proper repair and careful operation of the line. If so the learned court below erred in admitting and allowing the jury to consider the evidence of it. There was no attempt to show that it was inseparable from or a natural and ordinary consequence of the location and construction of the line, and yet it may have affected the verdict, as it did the estimates of the witnesses. In the absence of affirmative evidence that it was at least consistent with a proper location, construction and operation of the pipe line, it was not an element to be considered in this case. We therefore sustain the first and second specifications of error.

The third specification is misleading. It does not quote correctly the offer, the objections, or the ruling of the court. It appears from the record that the offer was to prove on cross-examination a matter which was foreign to the examination in chief, and that it was objected to and rejected on that ground. The offer was in violation of the well settled principle that the defence cannot be introduced on a cross-examination of the plaintiff's witness. For this reason the objection to it was properly sustained. It follows that the other specification of error must be overruled.

Judgment reversed and venire facias de novo awarded.