## Clements *v.* The Phila. Co., Appellant.

*Gas companies—Eminent domain—Cause of action—Damages.*

1. Under the constitution, the injury for which a recovery may be had must be such as would be actionable at common law.

2. The injury must be the natural and probable result of the construction, enlargement or operation of the corporate works.

3. It must be of such certain character that the damages therefor can be ascertained and paid or secured in advance.

4. A merely possible injury in the future cannot form the basis of a claim for damages under the constitution or the statute.

5. The measure of damages is "just compensation" to the land owner, which must be ascertained by a comparison of the value of the property as a whole immediately before and its value immediately after the construction, as affected by the easement, the same as in other cases.

*Easement—Removal of Pipes—Cause of action.*

In actions under the act of May 29, 1885, P. L. 29, for taking of an easement by a gas company, injuries which may be apprehended only as possible, from the removal of the pipes upon the abandonment of the easement, cannot be considered in the assessment of damages by the viewers, but, when actually occurring, form an independent cause of action, and the corporation is liable for all such injuries whether necessary or unnecessary.

The abandonment of an easement, for a pipe line, imports a permanent non user of the rights embraced in it. It does not necessarily imply an abandonment or removal of the appliances through which such easement is enjoyed. Such removal is not an enjoyment of the easement but an act following its abandonment, and is not the exercise of a right acquired under the proceedings by which the easement is acquired, but a vested property right existing independently thereof, and it follows that there can be no claim under the statute for injuries apprehended from its exercise.

Argued April 8, 1896. Appeal No. 76, April T., 1896, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1894, No. 567, on verdict for plaintiff. Before Rice, P. J., Wickham, Beaver, Reeder, Orlady and Smith, JJ. Affirmed. Rice, P. J., and Wickham, J., dissent.

Trespass for removing pipe line. Before White, J.

The action was trespass to recover damages alleged to have been caused to plaintiff's property by defendant in removing pipe line therefrom. In the year 1888 defendant appropriated the right of way for a pipe line across the plaintiff's property by proceedings in the court of common pleas. In March, 1893, defendant entered upon plaintiff's property and

removed this pipe line therefrom, and this action was brought
to recover alleged damages therefor; the question involved in
the case is what, if any, damages a property holder is entitled
to recover under such circumstances.

Defendant's points, inter alia, were as follows :

2. The plaintiff is only entitled to recover as damages in this
case compensation for any unnecessary injury done to said farm
in the removal of said pipe. The defendant company had the
right to haul its pipe from the place where it was laid to the
nearest and most convenient public highway, and the defendant
company is not liable therefore for any necessary damage in so
doing. *Answer :* The first part of this point is affirmed. The
latter part is affirmed, provided that in removing the pipe the
defendant company kept within the right of way originally
appropriated, as explained more fully in the charge. [1]

3. The defendant company is not liable for damages caused
by the fact that the ditch settled after the pipe was removed.
There was no obligation upon the defendant company to restore
the surface of the ground after removal to the same condition
that it was before the pipe was lifted. *Answer :* This point is
affirmed provided that the ditch was filled in a careful and
reasonable manner, and the surface left in a reasonably smooth
and level condition. [2]

The court, WHITE, J., charged the jury, inter alia, as follows :

Under that act of the legislature, and the right acquired by
the defendant company under it, they could appropriate a strip
of land anywhere through a man's farm, and as wide as they
chose to make it, for the purpose of laying and maintaining their
pipe.] [3] Of course the act provided that compensation must
be given. If they could not agree upon the price a bond might
be filed, and then viewers appointed to determine the damages.
That right of way did not give the defendant company the
exclusive right to the strip of ground ; it simply gave them the
right to lay a pipe, and to maintain that pipe, and to maintain
it as long as they wanted to keep it, if that was a hundred years,
or a thousand years. But they might take it up, and, in tak-
ing it up they would relieve the land of that easement, and, in
that respect, it would be better for the owner of the property
than to have the easement continue for an indefinite number of

years. The owner had a right to use the ground that was appropriated. He could use it for pasture, or he might plow it and put in a crop, but, of course, his right was subject to the right of the defendant company to have a man pass along it and examine it, and, if it got out of order, to repair it; and, if necessary, to haul pipes along the line. These were the rights of the defendant company, acquired by the appropriation, and when they chose to abandon it, they had a right to take up and remove the pipes. That would be a final abandonment of their right.

[Now, it seems this company, in making the appropriation for the right of way, did not designate what width through the land they wanted. I think all these companies ought to do that. It is impossible for a board of viewers or a jury in court to clearly determine what the damages should be when there is no width designated for this right of way. But it seems in this case that it was not done, and now the question arises here, how far out from that pipe could the defendant go with teams in removing it? In removing the pipe they had no more rights than they had originally under the appropriation. They had no more right to go outside of a reasonable appropriation in removing the pipes than they had originally in placing them there. I think when the defendant company does not designate the width they want, they would be limited to what is strictly necessary for their purpose. Now, how much was necessary for them to use in laying one string of their ten inch pipe? How much width would be necessary for that purpose? They are limited to what they originally required.] [4] The law provides that where the line runs through a wood the pipes may be laid on the surface of the ground; where it goes through cultivated fields it has to be buried at least two feet below the surface. It does not appear here whether the portion, said to have been laid through the woods, was sunk below the surface or laid on the surface.

[Now, what width would be necessary for the construction of this pipe line originally? There doesn't seem to be any very uneven ground. There is no evidence but what a foot in width would be sufficient for the pipe. Suppose the company had appropriated twelve feet in width; would that not be quite enough to dig the ditch and have the team go along it hauling

the pipe? Many of these companies, originally, appropriate only eight feet in width, but that, evidently, would not be sufficient to make an excavation, and haul the pipes, and the result was, they frequently went outside of that and caused trouble and difficulty. I cannot see, in ground like most of the farm land in the country, but what, say twelve feet, would be wide enough to dig the ditch; put the earth on one side and have a wagon go along with the pipe. If that would be sufficient for the laying of this pipe line through this farm, originally, the defendant has no more right to go outside of it now than it had then. I have to leave to you what would be a reasonable appropriation in the original construction of this pipe line. If the company had appropriated twelve feet they would have no right to go one inch outside of that twelve feet for any purpose whatever, and, if a team went outside of that, it would be a trespass on the property of the farmer. So, now, in removing these pipes, they were limited to what was the original appropriation; and if they went one foot outside of that, they were trespassing on the plaintiff's farm.] [5]

[I do not remember, gentlemen, of any evidence in this case that fixes what width was necessary to be used in removing these pipes. Some witnesses say the pipes were laid close by the trench, and they came up with teams as near as was necessary to load them. Well, how much would that take; how many feet in width; they had no right to drive out on the man's farm to turn the wagons, if that was beyond their right of way, and there is some evidence (and I do not know that it is controverted by the defendant) that some of these teams went out fifty feet from the line. They had no right to go out that far from this line, because there is no evidence to show that that was necessary or proper. But there is evidence that some went out one hundred and fifty feet. This is a matter for the jury to determine, as to how far they have trespassed beyond their original right of way.] [6]

[Now, there are two grounds of damage claimed by the plaintiff. One is for this driving over the fields a considerable distance from the trench, and driving over it just after a very heavy rain, when, as one of the witnesses testified, the wagons sank down in the field to the hubs, and when two horses stalled with a load and two other horses had to be hitched to the wagon to

get it out.   If any of you are farmers you will know what effect that will have on a meadow or on a field.   That is one ground of damage here, and if they drove outside of their original right of way and injured the field, that is an element of damage for which the plaintiff is entitled to recover.

Another claim is that in filling up the ditch there was negligence or carelessness on the part of the defendant company. The plaintiff said, as I understood him, that the ditch was dug when the ground was frozen, and it remained open about a month before it was filled in, and before it was filled in the soil at each side, for some distance, fell in and was covered up from two to three feet below the surface, and the subsoil which was thrown out from the ditch was thrown out on the surface, injuring the ground in that way.   The defendant's witnesses say it was only open about ten days.   It is also contended that the ditch was not filled properly; that it sank, and the ground was not smoothed as it should have been.

These are questions of fact for you, gentlemen, and if you find on either ground that the plaintiff is entitled to recover, it is for you to say, under the evidence, what amount of damages the plaintiff has sustained.] [7]

Verdict for plaintiff for $150.   Defendant appealed.

*Errors assigned* were (1, 2) answers to defendant's points, reciting same; (4–7) in portions of the general charge, reciting same; (8) in ruling upon offers of evidence on the part of the plaintiff, as follows, to wit: The witness ex parte plaintiff, to wit, James Armstrong, being placed on the stand testified as follows, to wit:

Q. What injury was done to that farm by this hauling that was done and the slipping in of this trench?

Defendant's counsel objects to the last part of the question.

Objection overruled by the court and a bill filed for the defendant, whereupon said witness testified as follows, to wit: A. You mean in value?   Q. Yes, sir.   A. Well, I would say, taking everything into consideration, I would consider the injury $100.

*Geo. B. Gordon*, with him *William Scott*, for appellant.

*J. P. Hunter*, for appellee.

OPINION BY SMITH, J., December 3, 1896:

The defendant is a corporation organized for the transportation and distribution of natural gas. In 1888, by a proceeding under the act of May 29, 1885 (P. L. 29), it obtained, across the plaintiff's land, the easement provided by that act, and proceeded to lay its pipes. In 1893, its supply of gas being exhausted, it removed its pipes. This action is brought to recover compensation for injuries charged to have been done to the plaintiff's land in this removal. On the part of the defense, it is contended that compensation for injury necessarily done in such removal was included in the original assessment of damages, and that the recovery in this action must be limited to " compensation for any unnecessary injury."

The statute under which the defendant acquired its easement provides (sec. 10) that " prior to any appropriation the corporation shall attempt to agree with the owner as to the damage properly payable for an easement in his or her property; " that upon failure to agree, " the corporation shall tender to the property owner a bond with sufficient sureties to secure him or her in the payment of damages ; " that the bond, if not accepted, " shall be presented to the court of common pleas of the proper county, after reasonable notice to the property owner by advertisement or otherwise, to be approved by it," and that " upon the approval of the bond and its being filed the right of the corporation to enter upon the enjoyment of its easement shall be complete."

In the present case, the bond was filed and approved, whereupon viewers were appointed and the damages assessed as directed by the statute. If the damages here claimed were included in that assessment, or were " damages properly payable " for the easement, and therefore should have been included, this action cannot be maintained. There can be no severance of the cause of action: O'Brien v. Railroad Co., 119 Pa. 184 ; Denniston v. Philadelphia Co., 161 Pa. 41. If, however, they are not damages properly payable for the easement, and therefore could not have been assessed, they may be recovered here.

The statute does not define the character of the damages, or fix the condition of the bond beyond requiring it to be sufficient to secure the payment of damages. This, however, necessarily implies the damages " properly payable." In the bond filed by

the corporation, the condition was for the payment of "such damages as he (the owner) shall sustain by reason of the laying down and construction of said pipe line through the property aforesaid, when such damages shall have been agreed upon or assessed in the mode pointed out by law." The owner made no objection to this condition, and the bond was approved by the court.

The plaintiff in the statement claims compensation for all the injury done to her land in the removal of the pipes, without distinguishing between that which was necessarily done and that which may have been done without necessity. The defendant in the points submitted conceded the plaintiff's right to recover for any unnecessary injury, but contended that the award by the viewers included "all such damages as would necessarily and reasonably result from the removal of the pipe line."

The issue between the parties, therefore, is whether the damages arising from the removal of the pipe could legally have been included in the assessment by the viewers.

The easement acquired by the gas company was the right to construct the pipe line. The transportation of gas through the pipes, and entry for the purpose of repairing or otherwise maintaining them, so long as the company should continue to occupy the land with them, are necessary incidents of the easement. The price to be paid for this easement and its incidents is compensation to the landowner for the occupation and use of the land which it involves, and for the injuries resulting from such occupation and use. As elements of compensation, only those injuries are to be considered which arise so naturally as to be foreseen with reasonable certainty, and are so definite in character that their injurious effects can be presently calculated, and measured, pecuniarily, with reasonable accuracy. Viewers and juries are permitted to take into account only injuries certain and definite in their nature and consequences, and substantially affecting the immediate market value of the land; while claims for damages based on theories, conjectures and possibilities have not been allowed: Wallace v. Jefferson Gas Co., 147 Pa. 205; Railway Co. v. McCloskey, 110 Pa. 436.

The principles that govern the ascertainment of compensation upon taking land for a public use—both as to the matters to be

considered and those to be excluded—have been settled by numerous adjudications. One of the earliest cases is the Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411, which was a proceeding to assess the damages sustained by the landowner through the construction of a dam by the Navigation Company. Mr. Justice GIBSON, delivering the opinion of the court, said: " The material inquiry is, at what point of time were the jury to estimate the damages as having been suffered? Indisputably, at the time when the injury complained of was complete: which was the moment the dam was finished, or, rather, when the obstruction, by swelling the water, permanently produced its most injurious consequences. The principle that the extent of an injury at the time it is suffered is to govern the compensation to be received, without enhancement from subsequent circumstances, is familiar and applicable to all cases, which I at present recollect, where compensation is to be made in damages." After citing various examples, he continued: " The compensation was to be prospective, as well as retrospective, but to be estimated with reference to the time when the injury was committed. It was in fact to be the price of a privilege to swell the water to a particular height for an indefinite time. Now this price was due the moment the privilege was entered upon and the price could be ascertained, which was obviously the time when the obstruction was first completed. The jury were therefore to ascertain what was then due; and the amount clearly could not be enhanced, or in any way affected, by subsequent injuries, the consequences of the obstruction." After demonstrating that a claim based on anticipated loss of profits could not be taken into account in the assessment of damages, he adds: " I mention this to show the danger of taking into consideration circumstances posterior to the time when the privilege is fully entered on, and its consequences to the individual to be compensated are ascertained. 'The jury are to consider the matter just as if they were called on to value the injury at the moment when compensation could first be demanded." The view thus announced has repeatedly been cited with approval by the Supreme Court: Railway Co. v. McCloskey, 110 Pa. 436; Becker v. Phila. & Reading R. R. Co., 177 Pa. 252; and there has never been a departure from it.

Among the elements to be considered in fixing the compen-

sation for an easement like the present are the amount of land disturbed by laying the pipe line, the permanent occupancy of a part of it as a path to walk over for purposes of inspection or repair, and the injury to fences and crops : Wallace v. Jefferson Gas Company, 147 Pa. 205; McGregor v. Gas Company, 139 Pa. 230; the manner in which a farm is affected by the location and construction of the pipe line upon it: Denniston v. Philadelphia Co., 161 Pa. 41; the loss in value to the tract by the appropriation of part of the underlying strata for the support of the surface: Pennsylvania Coal Company v. Versailles Gas Co., 131 Pa. 522; Wallace v. Jefferson Gas Co., 147 Pa. 205. And generally, all such matters, as owing to the peculiar location of the easement, may affect the convenient use and future enjoyment of the property, are proper matters for consideration: Railway Co. v. McCloskey, 110 Pa. 436. But damages which may possibly result from a negligent operation of the easement cannot be considered as an element of its price. Even an injury arising from the leakage of gas, actually occurring prior to the assessment of damages, cannot be taken into account, "unless it appears that such would be the natural and ordinary result of the appropriation: " Denniston v. Philadelphia Co., 161 Pa. 41. " The right to damages accrues on the location and construction of the line, and is in no sense enlarged or abridged by subsequent occurrences: " Ibid.

It is conceded—and indeed it cannot be questioned—that the corporation has a right to remove its pipes on abandoning the easement. There is, however, no assurance that it will do so; but even assuming this to be its duty, it is clear that the resulting injury to the land must depend on the condition in which the surface will be left upon their removal, compared with its condition while they remain. But it is impossible to determine what that condition may be or the extent of damage that may arise from it. It cannot be said that a condition injurious to the owner must necessarily or even probably result from the removal of the pipes. Whether the gas company will, on removing them, leave open the trench they had occupied, or will partially fill it, or will wholly fill it and leave the surface in as good condition as before, or will do other damage to the land, can by no possibility be ascertained. There is no ground for presumption or inference as to the conditions that will fol-

low the removal of the pipes, and purely conjectural conditions form no basis for estimating the possible damage to the landowner. If there may be a resort to presumption, it may well be presumed that the gas company will regard its legal obligations in the premises; and a failure to perform them may be redressed by action. In fixing the landowner's compensation, there is no ground, in either reason or authority, for taking into account conditions that cannot be foreseen as even probable, or damages that cannot be estimated with the slightest approach to certainty. The compensation must be ascertained from conditions and effects that are either of common knowledge and observation as the ordinary and natural result of the easement and its incidents, in such a degree that they may reasonably be anticipated, or can be satisfactorily proved by the established rules of evidence.

There could hardly be a clearer illustration of the impossibility of an estimate by a jury of the damage arising from the removal of the pipes than is presented in the case before us. There is evidence of injury from the falling in of the sides of the trench after the removal of the pipes, through the operation of rain and frost, consequent on delay in filling the trench, and of injury to land adjacent from driving over it for some distance, with heavy loads, while it was wet and soft. Without, however, a knowledge in advance of the existence of conditions or the employment of methods necessarily leading to injury, and the extent of their operation, no estimate of the consequent damage is possible. But evidence on this subject is wholly unattainable; and it is utterly beyond human prevision to determine whether the work of removal will be conducted under conditions such as contributed to the injury in this case, under conditions productive of other injuries, or in such a manner as to entirely avoid damage. The language of Mr. Justice GREEN in Wallace v. Jefferson Gas Co. (supra), with reference to a conjectural injury by reason of a possible fracture of the pipe and escape of gas, from a subsidence of the surface that might follow a removal of the underlying coal, is peculiarly applicable to the present case. As in that case, the element of damage for which the appellant here contends "depends upon an uncertain and problematical event, which may never occur." It is "merely speculative, imaginary and theoretical."

The right to remove the pipes can in no just sense be regarded

as an incident of the easement. Rights incident to an easement are those essential to its enjoyment or maintenance. They come into existence with the easement and cease on its termination. Rights arising from the abandonment of an easement are not of this character. The right which a natural gas company acquires, by the proceeding under the statute, is that of constructing, maintaining and using a pipe line. Its right to remove the pipes is not acquired through that proceeding, but is necessarily implied in its undoubted right to abandon the easement and withdraw from the occupation and use of the land. We must not confound the abandonment of the easement in this case with either the abandonment or the removal of the pipes. The abandonment of an easement imports a permanent nonuser of the rights embraced in it; it does not necessarily imply an abandonment or a removal of the appliances through which the easement is enjoyed. The removal of the pipes is not an enjoyment of the easement, but an act following its abandonment. It is not an exercise of any right vested in the corporation by the proceeding under which the easement is acquired, but the exercise of a vested property right existing independently of the easement and to be enjoyed only upon its abandonment. Compensation under the statute is to be made only for the rights acquired under the statute. The right to abandon the easement and remove the pipes not being thus acquired, there can be no claim under the statute for injuries apprehended from its exercise.

The solution, however, of the question under consideration does not depend on whether the right of removal is an incident of the easement or not. The right to compensation for consequential damages arising from the exercise of the power of eminent domain is of constitutional and statutory development, and he who seeks remuneration for such injuries must bring his demand within some express provision of the law. In no aspect of the question can it be said that the possible injuries from removing the pipes, on abandoning the easement, are caused by the original taking and construction; they can arise only from a separate and subsequent cause, bearing no sequential relation to the primary construction or succeeding operation of the pipe line.

It is further urged, however, that the apprehension or the

possibility of damage, in the event of the removal of the pipes, might have affected the market value of the land not immediately occupied by them at the time of the assessment, and therefore must be considered as an element of damage as incidental to the taking, and that the rule permitting viewers to inquire whether the emission of smoke, cinders and sparks, from locomotives, lessens the present market value of lands contiguous to railroads, should be extended to this class of cases, so that possible injury to the freehold, in the event of the removal of the pipe, might be considered and allowed by the viewers.

As to the first part of this proposition, it is sufficient to say that the right of a railroad company to operate its road, and the right of water, gas and pipe line companies to transport water, gas and oil, are, in a certain sense, incidents of the respective easements in the lands of others acquired by those corporations. Yet it will hardly be contended that injuries to persons or property caused by the exercise of these "incidents" should or could be anticipated and provided for in advance. On the same principle, the mere fact that the right of a gas company to remove its pipes may be incidental to the taking and construction presents, in itself, no reason why any damages caused by doing so should be presumed or anticipated by viewers who may conclude their duties even before any pipe is laid. Non constat that any will be laid.

As to the second part of the proposition, there is no sound analogy between the conditions suggested. It is of common knowledge and observation that a railroad by reason of the noise, smoke, cinders and sparks from locomotives, exposes adjacent property to injuries and annoyances which necessarily affect its use and lessen its market value immediately upon the construction and operation of the road; and the degree of injury from these causes can be estimated in advance with quite as much accuracy as during the operation of the road. These dangers and annoyances begin with and continue during the operation of the road, and cease upon its abandonment. In no reported case has the attempt been made, under this rule, to recover damages which might be incurred after an abandonment of the railroad, although it is quite possible that much more damage might result from such abandonment,—leaving cuts, embankments, and other obstructions to the use of the land by

the owner,—than from the removal of gas pipe from the ground. To apply that principle to cases of damage by reason of the removal of gas pipe, as contended for, would be to extend a rule, founded in reason and in fact, to conditions not presently existing, and which may never arise. To do so would permit a recovery, without rule or limitation, for damages which have not arisen and, which if ever arising, are uncertain and wholly conjectural in both character and extent.

In the absence of legislation specifying the character and extent of the damages recoverable in proceedings under the act of 1885, the Supreme Court has determined that the damages assessable in this class of cases shall be such as are recoverable under the constitutional provision that "just compensation for property taken, injured or destroyed" shall be first made or secured when a corporation takes private property for public use by virtue of its right of eminent domain: Fisher v. Baden Gas Co., 138 Pa. 301. In all the reported cases the several elements considered in assessing the damages, within the meaning of this section of the constitution, relate to injuries that presently affect the value of the property and are of a reasonably certain character. This constitutional provision was held in Fisher v. Baden Gas Co., supra, to fix the measure of damages in cases where land·is taken by gas companies. Its proper construction, therefore, will determine the question raised ·here. This section has been construed, upon an exhaustive discussion, in the case of Railroad Co. v. Marchant, 119 Pa. 558, and on its meaning and interpretation not only the interests involved in that case but the conservation of a wide range of corporate interests largely depended. Chief Justice PAXSON, in construing this section, there said: "Just here, it is proper to say, there is not a word about 'consequential' injuries in the constitution. The word itself has acquired a broad popular meaning by which persons may be misled. In judicial proceedings it should be used intelligently and with due regard to its proper meaning. In its application to the constitution we understand it to mean an injury to a man's property, the natural and necessary result of the construction or enlargement of its works by a corporation; an injury of such certain character that the damages therefor can be estimated and paid or secured in advance as provided in the constitution. . . . It is very plain to our

view that the constitutional provision was only intended to apply to such injuries as are capable of being ascertained at the time the works are being constructed or enlarged, for the reason, among others, that it requires payment to be made therefor, or security to be given in advance. This is only possible where the injury is the result of the construction or enlargement. For how can injuries which flow only from future operation of the road, which may never happen, be ascertained in advance, and compensation made therefor?" It was also said in that case that the word "injury," as used in the constitution, "means such a legal wrong as would be the subject of an action for damages at common law." This forceful interpretation of the constitutional provision in question has been followed in all the later cases requiring its application, although dissented from by one distinguished member of the Supreme Court.

The construction thus given to this section harmonizes our law on the subject with the general doctrine laid down in the text-books and the decisions of the higher courts of sister states, and limits the inquiry by the viewers or jury, in these cases, to the difference between the value of the land as a whole, immediately before the injury or construction, and its value immediately after, as affected by the easement, in conformity with the established rule applicable to other cases where property is taken under the right of eminent domain.

From what has been said the following deductions may be made:

1. Under the constitution, the injury for which a recovery may be had must be such as would be actionable at common law.

2. The injury must be the natural and probable result of the construction, enlargement or operation of the corporate works.

3. It must be of such certain character that the damages therefor can be ascertained and paid or secured in advance.

4. A merely possible injury in the future cannot form the basis of a claim for damages under the constitution or the statute.

5. The measure of damages is "just compensation" to the landowner, which must be ascertained by a comparison of the value of the property as a whole immediately before and its value immediately after the construction, as affected by the easement, the same as in other cases.

28    CLEMENTS v. PHILA. CO., Appellant.

Opinion of the Court—Dissenting Opinion.    [3 Pa. Superior Ct.

These conclusions receive further support from the following authorities: Railroad Co. v. Gilleland, 56 Pa. 445; Port v. Huntingdon R. R. Co., 168 Pa. 19; Erie Railroad Co. v. Hummell, 27 Pa. 99; Railroad Co. v. Lazarus, 28 Pa. 203; Gilmore v. Railroad Co., 104 Pa. 275; Comstock v. Ry. Co., 169 Pa. 582; Railroad Co. v. Stauffer, 60 Pa. 374; Railroad Co. v. Rose, 74 Pa. 362; Mills on Eminent Domain, 326; Randolph on Eminent Domain, sec. 377.

The court below restricted the right of recovery to injuries committed "outside of the original appropriation," and intimated its view of the proper extent of such appropriation. This however did the appellant no harm, since a part of the damage for which it was legally liable was thus excluded. In fact, there had been no appropriation of the land beyond the space occupied by the pipes. Whether any limits should have been fixed in the original taking is not now material. If fixed, they could have served only to define the extent of occupancy and use while the easement existed. The right to remove the pipes upon the termination of the easement, though absolute, must, like the right of a tenant to remove fixtures at the termination of his tenancy, be exercised without injury to the freehold. Therefore, whatever might be said of the assignments of error, on the theory that the defendant is liable only for unnecessary injury, becomes unimportant in our view of the case. Holding as we do that injuries which may be apprehended as possible, from the removal of the pipes, upon the abandonment of the easement, cannot be considered in the assessment of damages by the viewers, but, when actually occurring, form an independent cause of action, and that the corporation is liable for all such injuries, whether necessary or unnecessary, the rulings by the court below were as favorable to the defendant as it had a right to expect.

The judgment is therefore affirmed.

DISSENTING OPINION BY WICKHAM, J.

The questions raised by the assignments of error, in this case, relate to the rights and duties of a company organized to transport natural gas and engaged in removing its pipes, preparatory to abandoning its right of way over farming land. The act of May 29, 1885, P. L. 29, under which the appellant company

obtained its right of way over the appellee's farm, is silent as to the right of the company to dig up and remove its pipes, but it is rightly conceded, by the appellee, that the appellant had an implied right to do this. The appellee contends, however, in her printed and oral arguments that, in so doing, the company should have kept within the limits of its original appropriation, and should also have promptly and carefully filled the trench from which the pipes were taken.

As to the latter proposition, there can be no question. The exercise of the implied right to open the trench and remove the pipe, carries with it the implied duty to fill it in a careful manner and with reasonable diligence. A failure .to do either of these things would constitute actionable negligence, within the meaning of the second proviso in section 10 of the act. The proviso referred to reads as follows : " That any company laying a pipe line, under the provisions hereof, shall be liable for all damage occasioned by reason of the negligence of such gas company." But, even without this, the. landowner would have his remedy at common law.

The proceedings under which the company obtained its rights show that " The Philadelphia Company, under lawful authority, has surveyed a route and is about to lay down and construct a ten inch pipe line for the transportation of natural gas," etc. Then follows a mere line description by courses and distances of the route selected.

The company had the right to take an easement of this kind. It was not bound, as the learned and able trial judge thought, to appropriate a ten or twelve foot strip, or a strip of any other designated width, as would be the case if it were taking land for a road, or railway. So much is indicated by the decisions in Penn Coal Co. v. Versailles Gas Co., 131 Pa. 523 ; and McGregor v. Gas Co., 139 Pa. 230. In the latter case it is said that one who exercises the right of eminent domain, under the act of 1885, " must pay for what he takes, but he ought not to be compelled to take and pay for what he does not need." But if this were not the law generally, it is the law of this case, as the landowner, knowing the character of the taking, made no objection thereto, and must therefore be held to have assented, so far as that matter is concerned.

I think, therefore, that it was erroneous to say to the jury, in

the general charge, and in answer to the defendant's second point, that the company, in removing the pipe, was a trespasser, if it went outside of the "original appropriation" in the sense wherein these words were used. The jury, no doubt acted upon the suggestion of the court and assumed that a twelve foot strip, perhaps less, must be deemed the right of way along which the company's employees might haul the pipe, and off which they could not legally go, save at either end. This would compel them, in order to reach a highway, to go on adjoining lands, over which they would not have the shadow of right to haul pipes from other farms.

The rule applicable in this case is the one well recognized at common law, namely, that the dominant owner shall be permitted to enjoy his easement in such a manner as will secure to him every advantage contemplated by the grant: Pomfret v. Rucroft, 1 Wms. Saund. 321; Leyford's Case, 11 Coke, 46; Goddard on Easements (2d ed.), 246; 6 Am. & Eng. Ency. of Law, 149, 152.

As incidental to such an easement as we are here considering, the party entitled thereto may in a proper manner and with due care, go on the servient land and repair, renew, or in case of contemplated abandonment, remove the pipe. What constitutes due care must depend on the circumstances of each case. The conformation of the land, the character of the soil, its use, the time of the year, the character of the weather, all may have to be considered. Sometimes less injury will be done to land by driving to a distant highway than to one near by. Again, it might be better for the landowner, that the hauling should not be done along the line of the trench. It may also happen that the hauling can easily be done over land which is fallow or barren, or from which a crop has recently been removed. I cannot of course assent to the appellant's position, put in the form of a point in the court below, that a gas company has the right, in removing its pipe, to haul it "from the place where it was laid, to the nearest and most convenient highway." If this right existed in every case, it might happen, that where a pipe line ran parallel with a public road, the intervening land might be left with as many wagon tracks across it as there were loads of pipe. Growing crops might be destroyed with impunity and orchards, nurseries, pleasure grounds and lawns seriously injured, without chance for redress.

It must be presumed, that the landowner was fully compensated for the construction of the line and everything necessary to be done, in a reasonable manner towards its maintenance and repair and the ultimate removal of the pipe. The bond, it is true, only refers to damages for the laying down and construction of the line, but the obligee's compensation was not assessed according to the letter of the bond but the spirit of the statute. The condition of the bond did not define the powers and duties of the viewers, the statute did this, and we must assume that the landowner received everything, in the way of compensation, to which he was entitled under the statute. The effect of the ruling announced by the majority of this court is, that the plaintiff was entitled to compensation in damages for any injury whatsoever done to his land by the removal of the pipe, although it was conceded by the court below and by the counsel here, and is admitted by this court, that the company had the right to remove the pipe. This ruling is based, not on the special facts of this case connected with the original appropriation, but upon a construction of the statute under which the company acquired the easement. It is put upon the ground that the statute does not contemplate an assessment of damages for the removal of the pipe at the time of the appropriation.

The court is about to sustain the verdict and judgment upon a ground not taken by the plaintiff in the court below and not argued here. As said before, it is conceded that the company had the right to remove the pipe and to retain possession for that purpose. If it had such right when did it acquire it and how, if it were not a part of the easement acquired at the first taking?

If it were a part of the easement, like the admitted right to enter to renew or make repairs, the plaintiff was entitled to have the damages assessed for the whole servitude imposed on his land. How much that burden lessened the value of his land, taking into consideration all the rights which the company were entitled to exercise therein, and excluding negligence, was the question which the viewers had to decide: McGregor v Gas Co., supra. It is no answer to say that this was difficult of determination, because there was no certainty that the company would ever remove its pipe, or when it would remove it, or what injury would be caused thereby. The same might be

said of the right to enter and take up pipe for repairs or renewal and of many other rights which may never be exercised. The fact that the rights exist and may be exercised, adds to the burden of the servitude and may lessen the value of the land. Damages caused or that might be caused by a negligent exercise of the right to remove, of course were not considered or allowed in the viewers' assessment and such damages may be recovered here.

The consequences resulting from the doctrine contained in the majority opinion, it is respectfully suggested, would sometimes be very singular. For instance, if a pipe line were lifted, with a view to repairing defects, and replaced in the trench, without negligence, there could be no recovery; but if in consequence of a failure of gas before replacement, the pipes were hauled away, the trench refilled and the easement abandoned, the company could be held liable for every injury done, even although the greatest possible degree of care were exercised. In case of the necessary renewal of the line, it is not denied that, in addition to opening the trench and hauling away the old pipe, new pipe may be brought on the land, without liability on the part of the owner of the dominant estate, save for negligence; but it is held that if the kindred right to remove the pipe on abandonment, a right acquired at the same time, under the same statute and through the same proceedings, is exercised, no matter how carefully, the company may be treated and sued as a trespasser, if the least damage follows.

I cannot agree that the constitutional provision cited and relied on, in the majority opinion, has any application here. It is hardly possible that the lawmakers intended to confer on A a right in the lands of B which might be exercised any day, without also intending to provide just compensation. We should not assume that the right under discussion, which was a part of the servitude from the time of the original taking, was not to be paid for when compensation was made for the other branches of the same servitude, nor does the language of the statute require such a construction.

It is now a matter of common knowledge, whereof courts, juries and viewers may properly take notice that, sooner or later, natural gas wells become exhausted. Viewers have the right to assume that, at some time in the future, a natural gas

pipe line may be taken up and removed, as fully as they may assume that the line will probably need repairing and perhaps renewing. There is perhaps as much certainty as to when the one event may occur as the other.

After all, in the assessment of damages for appropriations under the right of eminent domain by railroad and pipe line companies, there are and always will be elements of injury which in their nature, when abstractly looked at, cannot be otherwise than uncertain; but because of this they are not necessarily excluded from the consideration of the viewers in determining the main question, how much the taking and its essential incidents have lessened the value of the property affected.

I think that nothing in any of the authorities cited in behalf of the majority opinion conflicts with the views herein expressed.

The company had the right to remove the pipe, doing no unnecessary damage. Whether or not any unnecessary injury was done was a question for the jury. To leave it to them to determine the width of an appropriated strip that never was taken, or intended to be taken, and to instruct them that going outside of that imaginary appropriation would be a trespass, was, we think, error. It may be, as the court told the jury, that driving fifty feet out from the line was unnecessary, but this was a matter for the jury, not for the court to decide. They might have viewed it differently, and, for aught we know, no more harm was done in this way than would have resulted from driving elsewhere. For the above reasons, I would reverse the judgment of the court below and award a new venire.

RICE, P. J., joins in this dissent.