## DAVID HARDESTY v. VOLNEY BALL.

MILL-DAM DAMAGES — *Nuisance, Action to Abate — Limitation.* Section 14, chapter 66, Compiled Laws of 1885, does not apply to actions for the recovery of damages where the upper proprietor, who has actually built and has in operation a mill and mill-dam, seeks to have the dam of the defendant abated or lowered on account of being an obstruction or nuisance, and has commenced, within two years after the completion of the dam of the defendant, an action to abate or lower it.

*Error from Lincoln District Court.*

ON the 8th day of April, 1887, *David Hardesty* commenced his action against *Volney Ball,* and in his petition alleged that—

"The said plaintiff, David Hardesty, complains of the said defendant, Volney Ball, for that the plaintiff, before and at the time of the committing of the injuries hereinafter mentioned, was owner and in possession of a certain tract of land in Lincoln county, described as the east half of the southeast quarter of section 7, west half of the southwest quarter of the southwest quarter of section 8, in township 12 south, of range 6 west of the sixth principal meridian, together with a certain water-power grist and flouring mill situated thereon, and erected at great expense by said plaintiff; that said grist and flouring mill is situated upon the Saline river at a point where said stream passes through said premises, and above the premises of said defendant, hereinafter described and mentioned, and that as owner and proprietor of said business and mill said plaintiff had the right to have the water of said river flow over said premises and from the wheels of said mill in the natural channel of said river at the usual and customary level at which the water flowed from the same, without hindrance or obstruction; the said plaintiff did, on the 12th day of November, 1878, petition the judge of the district court of Lincoln county to appoint three disinterested householders of the said county of Lincoln as commissioners to appraise any and all damages that might accrue to the owners of the following-described real estate, to wit: The north half of the southwest quarter of section 7, township 12 south, of range 6 west of the sixth principal meridian, owned by one Rachel Smith; also the south half of the southwest quarter of section 7, and the north half of the

northwest quarter of section 18, township 12 south, of range 6 west of the sixth principal meridian, and owned by one John F. Kline; also the east half of the east half of section 18, township 12 south, of range 6 west of the sixth principal meridian, and owned by one William Gilmore; also the west half of the southeast quarter of section 18, township 12 south, of range 6 west of the sixth principal meridian, and owned by William Gilmore; also the south half of the southwest quarter of section 7 and the north half of the northwest quarter of section 18, township 12 south, range 6 west of the sixth principal meridian, and owned by one Chalmers Smith.

"The petitioner likewise states that one Haslitt, whose given name was not known to the petitioner, had or claimed to have an interest in the foregoing tracts of land, also the southeast quarter of section 7, township 12 south, of range 6 west of the sixth principal meridian, owned by the National Land Company, to which one Washington Smith or Rachel Smith claimed an interest; also the south half of the northwest quarter and the northwest quarter of the southwest quarter of section 17 south, of range 6 west of the sixth principal meridian, owned by Washington Smith, and in which one Haslitt claimed an interest; by reason of the said plaintiff erecting and maintaining a water-power grist and flouring mill; that the honorable court aforesaid duly appointed H. Kingsley, James Wright, and J. J. Peate as such commissioners, who were duly qualified as such, and were commanded to meet upon the hereinbefore described premises of the said plaintiff, upon the 27th day of February, 1879, for the purpose of appraising the damages which might accrue to said real estate by reason of the erection and maintenance of the plaintiff's mill-dam and mill; that said commissioners met upon the said 27th day of February, 1879, and made such appraisement and returned to the said court their action thereon, which report was duly approved by the court, and became a part of the records of the district court of said county; that the said plaintiff afterward paid all damages awarded against him by said commissioners, and thereby came into full possession of all water rights belonging to said premises according to law, of which fact the defendant had due and legal notice; yet the said defendant, maliciously intending to injure said plaintiff or his property, by impeding the power of his said mill, did erect a dam in said Saline river as near the said mill of plaintiff's as possible, and below the said mill and premises of the said plaintiff, after the said mill of plaintiff was completed and

in operation, to a great height, and has ever since continuously kept and maintained said dam, and thereby has, since the 10th day of October, 1883, continuously to this time, obstructed the natural flow of the water in said river, and raised the water in said river on the premises of said plaintiff and upon the wheels of said mill, checking the natural flow of the water therefrom, and greatly injuring the power of said wheels as used in the operation of said mill, and damaging and diminishing the grinding capacity thereof; all of which was done and continued by said defendant with the wicked and malicious design to injure said plaintiff, and to his damage in the sum of $5,000.

"Said plaintiff further says that heretofore, to wit, on December 5, 1883, he filed his petition in the district court of said county against said defendant, alleging that said plaintiff was owner and in possession of said above-mentioned premises and mill, and had erected said mill on said above-described tract of land and on the said stream known as the Saline river, above the premises of said defendant, and that said defendant did, on or about the 18th of September, 1883, erect a dam across the bed of said river to a great height, and kept the same up until the time when said petition was filed, so as to obstruct and stop during said time the natural flow of the water of said river, and did raise the water in the bed of said stream, and back upon the wheels of said mill, thereby checking and impeding the natural flow of the water therefrom and the movement and motion of said wheels, and greatly diminishing the grinding capacity of said mill and the usefulness thereof; and in said petition as a second cause of action, said plaintiff alleging as aforesaid prayed for an injunction to restrain the maintenance of said dam at such height as to backflow the water upon plaintiff's mill, which cause of action is still pending and undetermined in said court.

"And thereafter in said court said defendant made answer to said petition, and denied all the allegations thereof, and such further proceedings thereupon had that at the September term of the year 1885, of said court, a trial was had in said court upon the issues so as aforesaid joined between said plaintiff and defendant, and upon such trial the jury found that the said dam of said defendant caused the water in said river to flow back upon the said premises of the said plaintiff and upon the wheels of said mill, obstructing the free and natural flow of the water from the said wheels and injuriously affecting the capacity and usefulness of said mill; and upon said

verdict and findings of the said jury, said court duly entered judgment and caused the same to be entered upon the records of said court, and said verdict, finding and judgment still remain in full force.

"Said plaintiff further says, that the injuries complained of in this case are a continuation of those complained of and found to exist in the above-mentioned action, and grew out of the act of the defendant in continuing the said dam as an obstruction in said river.

"Wherefore, said plaintiff prays judgment against the said defendant for the sum of $5,000, his damages so as aforesaid sustained."

To this petition a general demurrer was filed, and sustained by the district court, at the October term, 1887. To reverse this ruling the plaintiff brings the case here.

At the session of the court in January, 1890, this cause was decided, and there was filed herein an opinion, (opinion and syllabus by HORTON, C. J.,) affirming the judgment of the district court—all the Justices concurring. The syllabus therein formulated and declared to be the law, is as follows:

"1. The limitation of two years prescribed by § 14, chapter 66, Comp. Laws of 1885, applies to damages occasioned by the erection of mill-dams, although such dams are not constructed under the terms or provisions of said chapter 66.

"2. Where a petition shows that a mill-dam was erected on October 10, 1883, to such a height as to interrupt the natural flow of the stream and raise the level of the water thereof, and thereby cause the water to flow back, to the detriment of the plaintiff, and the petition also shows the mill-dam to be a permanent and lasting obstruction, *held*, that a right of action in favor of plaintiff and against the owner of the mill-dam accrued on October 10, 1883, and under the limitation of said § 14 the suit for damages occasioned by the erection of the dam should have been brought within two years."

On January 25, 1890, the plaintiff in error filed a motion for a rehearing, which was argued on March 7, following. On May 10, thereafter, the court sustained the motion, and filed herein the new syllabus, *supra*, and the opinion, *infra*.

*Garver & Bond, A. G. Hardesty,* and *D. Ritchie,* for plaintiff in error.

*A. H. Ellis,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: Upon the rehearing of this case our attention has been particularly called to the petition, which shows that in the action commenced on the 5th of December, 1883, Hardesty considered the obstruction of the mill-dam erected by Ball to be a temporary obstruction or injury only, and prayed for an injunction to restrain the maintenance of the dam at such height as to back-flow the water upon his mill. In the action commenced on the 8th of April, 1887, Hardesty also considered the obstruction of the mill-dam as a temporary injury only, and subject to abatement. If the plaintiff had chosen to consider the obstruction of the mill-dam as a permanent injury to the property, § 14, chapter 66, Compiled Laws of 1885, would have had full application; as, however, he commenced his action to abate the dam on the 5th of December, 1883, less than two months from the time the dam was completed, it is not fair or just to say he ever considered the dam a permanent or lasting obstruction. If he shall succeed in having the dam abated or reduced in height so as not to back-flow water upon his own mill, of course the obstruction complained of cannot be called permanent. In this view of the case, said § 14 has no application. That section applies to such dams as are constructed under the statute, and to such dams as are considered permanent and lasting — not to those dams against which proceedings are brought, within the two years after their completion, for abatement or removal.

Mill-dam damages—nuisance, action to abate—limitation.

The plaintiff had the privilege to consider the dam a temporary injury only, and in both actions he has sued for the special or temporary damages which have occurred as a temporary obstruction or nuisance. In the first action he recovered damages to the date of the trial of the case in 1885. His last

action is for the special or temporary damages which have occurred since that date. (*Railroad Co. v. Andrews*, 26 Kas. 702; *Akin v. Davis*, 11 id. 580; *Hendricks v. Johnson*, 6 Porter, 472; *Union Trust Co. v. Cuppy*, 26 Kas. 754; *McCoy v. Danley*, 20 Pa. St. 85; *Stadler v. Grieben*, 61 Wis. 500; *K. P. Rly. Co. v. Mihlman*, 17 Kas. 231; *C. B. & Q. Rly. Co. v. Schaffer*, Ill., 16 N. E. Rep. 239.) It would be unfair to the plaintiff, when he has treated in both his actions the dam as a temporary injury only, and as he has an action now pending to abate or remove a part of it, to say he has chosen to consider the dam a permanent and lasting injury to his mill. The prior decision of this court was rendered with the view that the dam was a permanent obstruction, and therefore within the statute of limitations of said §14, chapter 66.

In *Railway Co. v. Mihlman*, supra, this court ruled that—

"Where one creates a nuisance, and permits it to remain, so long as it remains it is treated as a continuing wrong, and giving rise, over and over again, to causes of action. But the principle upon which one is charged as a continuing wrongdoer is, that he has a legal right, and is under a legal duty, to terminate the cause of the injury."

In *Union Trust Co. v. Cuppy*, supra, Mr. Justice VALENTINE, speaking for this court, said:

"The wrong committed by the defendants was in the nature of a nuisance, and a continuing nuisance; and while possibly the plaintiff might at any time have had an action to abate the nuisance, yet he nevertheless had the right to sue at any time after any particular damage was done him, for the amount of such damage. It is possible, also, that the plaintiff might have waived his right at any time to consider the obstruction of the stream as a nuisance, and might have considered it as giving to the defendant a permanent right, a permanent easement upon his land, and then have sued the railroad company for the permanent injury to his land, and recovered for the injury as in a condemnation proceeding; but he was not bound to treat the obstruction as an easement, or to waive his right to treat it as a nuisance."

As to the right of Hardesty to recover, if the defendant has committed the wrongful acts complained of, see *Akin v. Davis*,

11 Kas. 580; *Hendricks v. Johnson*, 6 Porter, 472; *Bigelow v. Newell*, 10 Pick. 348–356; *Cary v. Daniels*, 8 Met. 466; *Ten Eyck v. Canal Co.*, 18 N. J. L. 200.

The law as declared in the original opinion filed is fully affirmed; but on account of the allegations in the petition that an action is pending by Hardesty to abate or lower the dam, a portion of the language in the original opinion is misleading, and therefore must be qualified and corrected. The district court, in its discretion, will have ample power to delay the trial of this case until the injunction proceedings recited in the petition are disposed of.

The judgment heretofore rendered in this case in this court will be vacated, and the judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.