CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V.
CHARLES ANDREESEN AND JOHN HARMSEN, EXECUTORS.

FILED JULY 10, 1901. No. 10,005.

Commissioner's opinion, Department No. 2.

1. **Railroad Can Not Obstruct Watercourses; Must Construct Drain.**
A railroad company in building its road has no right to obstruct natural watercourses, and must construct a culvert or drain with a proper grade to carry off the water from such natural stream which it crosses.

2. **Damages Notwithstanding Damages.** Damages are recoverable by a landowner against a railway company for maintaining an insufficient culvert or drain in an embankment, whereby his lands are flooded, although damages may have been recovered by plaintiff or his grantor for the location of the road, because the damages then recoverable were to be estimated upon the theory that the road would be constructed and maintained in a reasonably proper and skillful manner.

3. **Damages Accrue at Actual Overflow.** The right to damages for an obstruction of a stream by an insufficient culvert or drain does not accrue when the railroad is built, but when the overflow actually results.

ERROR from the district court for Sarpy county. Tried below before SCOTT, J. *Affirmed*.

*M. A. Low, W. F. Evans, C. S. Montgomery, Lorenzo W. Billingsley* and *Robert J. Greene*, for plaintiff in error.

*Charles L. Hover*, contra.

OLDHAM, C.

The defendant in error, herein styled the plaintiff, sued the plaintiff in error, herein styled the defendant, in the district court of Sarpy county, Nebraska, for damages alleged to have been caused to the pasture lands, walnut grove and fish-pond of plaintiff's testator. These lands adjoined the right of way of the defendant, and were alleged to have been damaged by the negligent reconstruction of defendant's road-bed, by which a natural stream of running water was dammed and caused to flow back on the lands of plaintiff's testator. Plaintiff had judgment below, and defendant brings error.

The facts from which this controversy arises are, that on the lands of plaintiff's testator there was a running stream fed by a spring, which flowed down a narrow, deep ravine in a northeasterly direction and emptied into Pappio creek. Before defendant's railroad was built plaintiff's testator had constructed two fish-ponds by damming this ravine below the springs. A sluice-box was placed at the bottom of the dam of the first fish-pond through which the water passed into the second fish-pond and by a similiar appliance the water from the second pond was conducted back into the natural channel, through which it flowed into Pappio creek. This basin drained about ten acres of the land claimed to have been damaged by overflow on account of defendant's obstruction of this stream. In 1890 the defendant, by condemnation proceedings, procured a right of way running east and west through the lands of plaintiff's testator and across this running stream. By this proceeding the lower fish-pond and a portion of the upper fish-pond were condemned for defendant's right of way. When defendant first constructed its railroad it erected a trestling over the ravine, but destroyed the artificial connection between the two fish-ponds and filled up the second fish-pond with the exception of the lower end of it, which was left still connected with the natural channel of the stream that flowed into Pappio creek. Plaintiff's testator constructed a ditch from the upper fish-pond through the trestling of defendant's road and back into the lower part of the second pond for the purpose of conducting the water back into its natural channel, and, according to the testimony of all of plaintiff's witnesses, this furnished a sufficient drainage basin for these waters. In 1896 the defendant filled up this trestling with a solid embankment of earth, thereby destroying the artificial ditch that had been constructed for drainage under their right of way. Defendant placed a twenty-four inch tiling under its road-bed to take the place of this ditch for drainage purposes; and as to the sufficiency of this tiling to properly drain the lands on

the south side of the right of way this controversy depends. The negligence in the reconstruction of the road-bed which the evidence of plaintiff imputes to the defendant is that the tiling was placed about four feet higher than the bottom of the ditch which drained the lands before the fill was made, and that because of this elevation the water that was formerly conducted away by the ditch was dammed and caused to flow back on the lands of the plaintiff's testator, destroying about ten acres of his pasture lands and a walnut grove thereon. Plaintiff's testimony tended to show that prior to the reconstruction of this road-bed there had been no swamps or back-water on the lands in controversy and that the lands were good pasture lands and contained a valuable grove of walnut timber, and that on account of the overflow of the lands the walnut trees had been killed and the grass had been greatly injured. Defendant, in its brief, does not complain of the damages awarded as having been excessive, but contends that under the evidence and the law it was entitled to have had a verdict directed in its favor by the court below. It seems to contend that all the injuries complained of in this suit were included in the claim for damages which was awarded plaintiff's testator in the condemnation proceedings by which the land was taken for defendant's right of way. It also contends that there is no proof of any negligence in the reconstruction of the road, and that the statute of limitations has barred plaintiff's claim for damages.

With reference to the contention that the damages sued for in this cause were only such as were included in the award of damages allowed in the condemnation proceedings we can not agree with the conclusion of defendant's able counsel. Damages awarded in condemnation proceedings for a right of way are allowed on the supposition that the road will be skillfully constructed, not only with reference to the safety of the traffic on such railroad, but also that it shall be constructed in harmony with the spirit of the maxim which says, "So use your own as not to in-

jure another." Hence it has been held that injuries re-
sulting from the unskillful construction of railroad cul-
verts can not be estimated as a part of the damages for
the right of way of a railroad company, and that proceed-
ings for condemnation of the land to which the landowner
and the company were parties shall not operate as an
estoppel in an action for injury to his lands caused by the
unskillful construction of culverts. *Ohio & M. R. Co. v.*
*Wachter,* 123 Ill., 440, 5 Am. St. Rep., 532. *Emery v.*
*Raleigh & G. R. Co.,* 102 N. Car., 209, 11 Am. St. Rep., 727.
It is universally held to be the duty of a railroad company
when its right of way passes over a stream of running
water to so construct its road-bed as to carry off the water
of the running stream, and any failure to perform this
duty, on account of imperfect culverts or any other means
of defective drainage which causes the water to flow back
upon the lands adjoining the right of way, is actionable
negligence. *Omaha & R. V. R. Co. v. Brown,* 29 Nebr., 492;
*Sullens v. Chicago, R. I. & P. R. Co.,* 38 N. W. Rep. [Ia.],
545; *Bryant v. Bigelow Carpet Co.,* 131 Mass., 491; *Ohio*
*& M. R. Co. v. Thillman,* 32 N. E. Rep. [Ill.], 529; *John-*
*son v. Atlantic & St. L. R. Co.,* 35 N. H., 569, 69 Am. Dec.,
560.

The contention that the statute of limitations has barred
this action seems to be founded on the theory that because
the road was built in the year 1890 plaintiff should have
immediately anticipated all the injury that might ever
accrue to his land by reason of any defective construction
of defendant's road, and have brought his action within
the statutory period from the date of the completion of
defendant's road. But this is not the law. A man has no
right to anticipate an injury from the probable negligence
of some one else. The statute of limitations does not run
until the injury has been actually received. Plaintiff had
no right to sue defendant until defendant injured him
by a negligent act. His right of action did not accrue in
this case until his land had been overflowed; hence the
statute of limitations would run from the date of the over-

flow of the land, and not from the date of the completion of defendant's railroad. *Sullens v. Chicago, R. I. & P. R. Co. supra; Chicago, B. & Q. R. Co. v. Schaffer,* 16 N. E. Rep. [Ill.], 239; *Omaha & R. V. R. Co. v. Standen,* 22 Nebr., 343.

Defendant, in its brief, attacks the instructions of the court or rather some isolated paragraphs of them. These instructions were all given orally to the jury by consent of both parties to the suit, and they are not free from criticism on account of being illogically connected and lacking the clearness and precision that characterizes commendable instructions. But taken as a whole they certainly give the defendant the benefit of everything it was entitled to in this controversy—in fact two instructions were given, at the request of the defendant, that would appear to be clearly erroneous, and given as they were, without a proper qualification, might have misled the jury, to plaintiff's material damage; but as plaintiff prevailed below, these instructions will be held to be error without prejudice. The policy of giving oral instructions in the trial of important cases is never to be commended; and it is only permitted when consented to by both parties. It invites inaccuracy and a want of precision in the phraseology of the charge, which always leaves it open to criticism by the unsuccessful party in the suit. The parties who invite oral instructions, do so with notice of the probability of this defect. When the instructions so given, taken as a whole, fairly present the issues to the jury, we will not examine for fly-specks on the sentences and phrases that compose the charge.

It is therefore recommended that the judgment of the district court be affirmed.

SEDGWICK and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.

NOTE.—A Natural Watercourse.—Where surface-water having no definite source is supplied by falling rains and the melting snow from a hilly region or high bluffs, and owing to the natural formation of the surface of the ground is forced to seek an outlet through a gorge or ravine, and by its flow assumes a definite or natural channel, and escapes through such channel regularly during the spring months of every year, and in seasons of heavy rains, and such.has always been the case so far as the memory of man runs, such accustomed channel through which the waters flow may fairly be said to possess the atttributes of a natural watercourse. *Palmer v. Waddell*, 22 Kan., 352. Reaffirmed in *Union P. R. Co. v. Dyche*, 31 Kan., 120, cited in 33 Kan., 776.

A railroad company, in constructing its railroad across a natural watercourse, constructed a culvert of such insufficient dimensions that it would not permit all of the water of the stream during floods to flow naturally or through the culvert. Afterward the railroad was placed in the hands of a receiver, and while in his hands and during a flood, the water in the stream, by reason of the railroad and insufficient culvert, overflowed the plaintiff's land and injured his crops. The railroad company was liable in damages. *Union Trust Co. v. Cuppy*, 26 Kan., 754, cited in 43 Kan., 156, 53 Kan., 317, 423.—REPORTER.