JAMES S. REED, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 10, 1910. No. 15,906.

1. **Waters:** RAILROAD EMBANKMENT: DAMAGES. Where damages were paid to a riparian owner for the diversion of a stream from his land, such damages do not cover future injuries by reason of the defective construction of a railroad embankment in such a manner as to retain flood waters which otherwise would have escaped through a natural channel.

2. ——: INJURY TO CROPS: ACCRUAL OF ACTION. Where an injury to crops is caused by the negligent construction of a railroad embankment, which arrested and held upon the land the flood waters of a natural stream, the cause of action accrues at the date of the injury, and not at the date of the negligent construction of the improvement. *Chicago, B. & Q. R. Co. v. Mitchell*, 74 Neb. 563.

3. Evidence examined and *held* to sustain the verdict.

APPEAL from the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*J. E. Kelby, Frank E. Bishop* and *Fred M. Deweese,* for appellant.

*Gomer Thomas* and *John Everson, contra.*

LETTON, J.

The plaintiff is a resident of Harlan county, owning land which lies in the valley of Sappa creek, which is a small stream running easterly and emptying into the Republican river. The railroad track of the defendant company runs about 20 rods south of the south line of plaintiff's land, crossing the creek about a quarter of a mile west of the west line of plaintiff's land, and also a few rods east of the. plaintiff's east line. From the point where the railroad crossed it to the west of the plaintiff's land the creek originally flowed in a northeasterly direction into and through his premises, thence curved again to the southeast to a point south and east of his land, where it was again intersected by the railroad. A solid embankment was constructed across the stream at both points of crossing, except that at the east crossing two iron drainage pipes, each 24 inches in diameter, were placed in the embankment to drain the old bed of the stream north of the railroad, and dispose of the natural drainage of the lands lying north and west, which was discharged into the old bed by several long ravines. The railroad company dug a new channel for the stream from the point where the embankment dammed it on the west to where it crossed the channel again on the east, so that the stream when it struck the embankment was diverted at right angles across the chord of the arc formed by its old channel and the railroad, and ran in the. ditch dug along the south side of the railroad. In 1886-1887, at the time the railroad was built, the change in the stream was made with the consent of John Reed, a brother of the plaintiff, who then owned the land, and he was paid $150 damages for this diversion of the stream from its natural

course. In 1903 the plaintiff, with knowledge of these facts, purchased the land. On July 1, 1905, there was an excessive fall of rain in this vicinity, between five and six inches falling during the latter part of the night and early in the morning of July 1, 1905. The flood waters, which before the construction of the railroad had overflowed the channel of the creek and flowed down what is known as the "first bottom", following the windings of the stream, being impeded by the railroad embankment, and the new channel not being of capacity to carry them off rapidly, accumulated until they rose to a height sufficient to flow over the railroad, which was washed out, and the waters rushed into the old channel. The flood waters were again dammed by the embankment to the east of plaintiff's land where the two drain pipes were placed. The water again accumulated until it rose to the top of the embankment, when it again broke through at or near the old channel. The plaintiff's land was flooded to a height of from six to ten feet, ruining his crops, destroying his hay and corn in crib, injuring the furniture in his house, and drowning his domestic animals, damages for which he seeks to recover in this action.

The petition alleges that the defendant negligently and carelessly failed to build or maintain a bridge or other means for the water to escape at the place to the east of plaintiff's farm, where the railroad crossed the channel, but negligently built an embankment there, and that during wet periods of the year a large amount of water flowed into the old channel, but could not escape therefrom, and would overflow and stand upon plaintiff's land, and that the defendant negligently failed to maintain a sufficient dam or embankment at the point where it sought to divert the stream from the natural channel to the artificial channel, and that by reason of this negligence the water on the 1st of July, 1905, flowed over the artificial embankment into the old channel, and on account of no proper means of escape being provided they caused the damage complained of.

The defendant alleged that the railroad was built in 1887 as now constructed; that the then owner was paid all damages by reason of such construction; that the present condition existed at the time plaintiff secured any rights in the land, as he well knew; that whatever damages resulted from the construction of the railroad and the change in the channel of the creek occurred in 1887, and that the cause of action, if any, accrued at that time. It is also alleged that the flood was of such unusual and unprecedented and excessive character as never had been known in that vicinity before; that the valley lands, regardless of the nearness of the railroads, were flooded to a great height for many days; that the railroad was overflowed and washed away in many places by the flood, which was of such a character as to constitute "an act of God", which the railroad company could not have anticipated and prevented. Plaintiff recovered judgment, from which defendant appeals.

We will consider the errors assigned in the order of their presentation in defendant's brief.

1. It is contended that the evidence establishes the defense that the flood was so unprecedented and unusual that the defendant could not reasonably be required to anticipate its occurrence, and was of such a character as to come within the class of happenings technically known as the "act of God." A number of witnesses testified it was the highest flood they had ever seen in the valley, either before or since; that hay, dead animals and other articles were carried away by it. Some of defendant's own witnesses, however, say that the waters in 1887 rose to within a few inches of the top of the grade, and one witness for the defendant testifies on cross-examination: "Q. Now, as to the height of the water, it has been up to about the ties before? A. Within a few inches of the ties; yes, sir. Q. A number of times? A. Well, about three times that I know of before that, it has been up pretty high there." Another witness testifies that they "had a few floods after that was just as bad." Taking all the

testimony with respect to the volume of this flood, we think the jury were warranted in finding that the washing out of the railroad embankment by the flood waters flowing down the course of the old channel, and the consequent flooding of the plaintiff's land by the retention of such waters where the lower channel was dammed, might reasonably have been expected from what had occurred previously in that locality. We think the evidence sustains the finding of the jury upon this point.

2. It is next argued that the construction was agreed to by the landowner, and damages paid. The testimony clearly shows that the damages were paid to John Reed for the right to change the stream and divert the flow from his land. This transaction, so far as the evidence shows, had nothing whatever to do with the manner of construction of the railroad, except in so far as it diverted the stream, which, as riparian owner, Reed was entitled to have flow as it had always flowed.

3. It is next contended that the right to overflow the lowlands on the north side of the railroad track had been obtained by prescription. It is said that the water had accumulated in the old channel from the drainage of surrounding lands and damaged the crops growing on the low land, and that, since this condition had existed ever since the building of the railroad, a prescriptive right of flowage had been obtained. The damages claimed are for injuries to the crops, furniture, live stock, etc., and not for injuries to the land itself. We have held in *Chicago, B. & Q. R. Co. v. Emmert,* 53 Neb. 237, *Chicago, B. & Q. R. Co. v. Mitchell,* 74 Neb. 563, and *Chicago, R. I. & P. R. Co. v. Andreesen,* 62 Neb. 456, that such damages do not fall within the rule contended for: "Where an injury to the crops and lands of one is caused by the negligent construction of a railroad embankment, which arrested and held upon said lands the flood waters of a natural stream, such party's cause of action accrues at the date of the injury, and not at the date of the negligent construction of the improvement." There is also evidence in the record

to show that claims for damages had been made, and that in 1902 or 1903 defendant paid the plaintiff's grantor $50 as damages for crops destroyed by water.

The defendant complains of instruction No. 8, which, in effect, tells the jury that the defense of an "act of God" is an affirmative defense, and the burden of proof is upon the defense to establish it, and criticises severely the statement that, if you "find that such injury was not occasioned by an act of negligence on the part of the defendant, * * * then your verdict should be for the defendant." The objection to the form of this instruction, as well as to No. 9 and of others treating on this subject, we think it is unnecessary to consider because the evidence warrants the conclusion that the jury found that the flood was not of such an unprecedented character as to constitute an "act of God", and that defendant by the exercise of reasonable care might have prevented the backing up of the water upon plaintiff's land, at least to a greater height than other lands where the flow was unobstructed. We think it clear from the evidence that, even if the railroad embankment had not been constructed, the volume of the freshet would have covered much of the lower portion of plaintiff's land. The evidence shows that the stream was out of its banks and covered the "first bottom" of the creek for several miles above. But it also shows that the "first bottom" above the railroad embankment was from a quarter to more than a half mile wide; that the point where the new channel was cut was close to the high bank of the "second bottom" on the south; and that the space between the railroad embankment and this bank was only from about 100 to 200 feet wide, so that the volume of flood waters which had spread over the entire "first bottom" were concentrated at this point; and that, as soon as the railroad embankment was washed out so as to furnish an outlet, the waters above rapidly fell. While the waters would probably have covered most of the "first bottom" on plaintiff's land if no railroad grade had been erected, we are satisfied that they would not have

reached the height to which they rose by several feet if it had not been there, or if free passageway had been afforded. We think it clear that all the damage that plaintiff suffered did not result from the construction of the embankment, and that in common with others he would have suffered by the flood in any event. The defendant, however, made no issue upon this point either by the pleadings or the evidence, and, having relied solely upon the defenses before mentioned, we cannot apportion damages in this proceeding.

It is urged that the amount of the verdict is not supported by the testimony; that there is no evidence to sustain the verdict with regard to the claim for potatoes, alfalfa hay, chickens, garden, and household goods, and that, since the jury were left at liberty to estimate these damages without testimony, there is prejudicial error. The record shows that, as to a number of items, the proof of value offered by plaintiff was erroneously excluded upon objections by defendant's counsel, but there is ample competent proof of damage to an amount greater than the sum fixed by the verdict, even excluding the 50 acres of corn, the fruit trees, garden, and a number of other items which were damaged or destroyed, but as to which the evidence of value was excluded. From a careful consideration of the record, we are inclined to think the jury guarded the defendant from paying any damages other than those suffered by the plaintiff in excess of what he probably would have suffered but for the embankment, and that the amount of recovery is not unjust. On the whole record, we find no error prejudicial to defendant upon the theory it adopted in the trial of the case, and which has been presented here.

The judgment of the district court is

AFFIRMED.