[Civil No. 1844.  Filed December 10, 1921.]

[202 Pac. 237.]

## STATE, Appellant, v. MATTIE A. DART, Appellee.

1. EMINENT DOMAIN—DAMAGES ALLOWABLE BEFORE TAKING EXCLUDE INJURY FROM POSSIBLE IMPROPER CONSTRUCTION.—Where damages are assessed before the taking, nothing can be included for wrongful or negligent acts, upon the theory that they may occur, but the damages are limited to such as necessarily arise from the lawful taking and the proper construction and operation of the improvement.

2. EMINENT DOMAIN—DAMAGES RECOVERABLE AFTER CONSTRUCTION OF WORKS INCLUDE INJURY FROM IMPROPER CONSTRUCTION.—Damages assessed after the construction of the works should be on the basis of the works as constructed, even if improperly constructed, for the condemnor should not be allowed to assert its own wrong.

3. EMINENT DOMAIN—DAMAGES TO LAND FROM DIVERSION OF WATER, CAUSED BY FILLING BRIDGE APPROACH TO SUPERSEDE SMALL BRIDGE, NOT FROM EXERCISE OF POWER.—The act of the state in filling in bridge approach to supersede small bridge was not in itself an act of appropriation under the power of eminent domain under Constitution, article 2, section 17, or so connected with such an act as to impose liability upon the state to pay compensation for damage to land from diversion of the waters of the river by reason of solid embankment, since the making of the fill constituted no new use of the state highway or new appropriation, but was a mere act of repair, and since, if the fill was negligently made, the negligence had no connection with the appropriation as originally made.

4. STATES—NOT LIABLE FOR NEGLIGENCE OF OFFICERS, AGENTS, OR SERVANTS, EXCEPT WHEN IMMUNITY EXPRESSLY WAIVED.—Dam-

ages cannot be recovered from the state for the negligence of its officers, agents, or servants, except when it has expressly waived immunity or assumed liability by constitutional or legislative enactment.

APPEAL from a judgment of the Superior Court of the County of Pinal. O. J. Baughn, Judge. Reversed.

Mr. W. J. Galbraith, Attorney General, and Mr. George R. Hill and Mr. Wm. A. Harkins, Assistant Attorneys General, for Appellant.

Messrs. Bullard & Jacobs and Messrs. Armstrong, Lewis & Kramer, for Appellee.

FLANIGAN, J.—This is an appeal by the state of Arizona from a judgment recovered by appellee (hereinafter referred to as plaintiff) in an action to recover the damages sustained by her because of an alleged negligent diversion of the waters of the Gila River, whereby a flood which occurred in January, 1916, inundated her lands and partly washed them away and destroyed improvements thereon. For such damages the plaintiff, in accordance with the provisions of section 6, chapter 80 (Laws Regular Session 1912), presented to the state auditor a verified, itemized claim, which claim was refused and disallowed by such officer.

The complaint alleges that the damages sustained were the result of the negligent and unskillful construction, location, and maintenance of the State Highway Bridge, near Florence, and that such negligent acts and omissions, exclusive of all other causes, brought about the injuries to plaintiff's lands and improvements.

There was evidence for plaintiff to show that she was the owner of forty acres of land, with the improvements, situated about a mile and a half below

the bridge, on the south bank of the river; that she was farming these lands for agricultural and horticultural crops; that during a flood of the Gila River, which occurred in 1915, the north approach of the bridge was washed out, and that afterwards and before the flood of 1916 the part of the north approach carried away by the flood of 1915 was filled up solid with earth by the officers and agents of the state, so that when the 1916 flood occurred the waters of the river were deflected, by reason of such solid embankment, around the south end of the bridge and on to plaintiff's land. According to the testimony of one of plaintiff's witnesses, the waters thus diverted by the fill, after escaping around the south end of the bridge, went back into the main channel of the river, and, "swinging from side to side of the river, impinged on both banks," and thus reached plaintiff's lands, on a course from the north bank. While it is charged that negligence existed in the failure to cut the south approach, which, according to the testimony was washed away by the 1916 flood, the plaintiff in this court seems to rely entirely on the alleged negligence of the state in filling the gap made in 1915 in the north approach, it being claimed that this work caused the diversion of the flood which did the damage to plaintiff's property. The bridge itself, of course, was, and the failure to cut the south approach may have been, factors contributing to the result, but, as the jury may have believed that but for the filling of the north approach the waters would have passed away without harm to plaintiff, we consider the case on the theory presented, premising that any causal relation which the failure to cut the south approach may have had is governed by the rules announced. There was no testimony adduced to show that the land had been theretofore flooded, and for aught that appears it may never again be flooded.

As above noted, the plaintiff recovered in the lower court upon a complaint alleging that the injury to her property was occasioned by the negligent acts and omissions of the state. In this court, however, a different theory is adopted; it being now claimed that the action is based on the constitutional provision that—

"No private property shall be taken . . . for public or private use without just compensation having been first made, or paid into court for the owner." Section 17, art. 2.

And in this connection it is urged that the words "negligent" and "unskillful," used to characterize the acts or omissions of the state, may be disregarded as surplusage, because the state is liable for the acts complained of, without regard to whether the work was done negligently or unskillfully.

It is said also that the action is for damages caused by the state of Arizona, and not by the territory of Arizona; it being conceded that the construction and maintenance of the bridge and approaches by the territory in 1909–1910 gives rise to no cause of action against the state, but asserted rather that the state's own acts caused the injury. The contention is, in short, that the filling of the north approach, and the consequent injury to plaintiff's property, was a taking or damaging for which she should be compensated under our constitutional provisions with reference to the exercise of the power of eminent domain, "upon the principle that the government by the very act of taking impliedly has promised to make compensation" in accordance with the dictates of justice and the terms of the Constitution. Plaintiff's contentions under this head are based largely upon the authority of the following cases, viz.: *Tyler* v. *Tehama Co.,* 109 Cal. 618, 42 Pac. 240; *Reardon* v. *City and County of San Francisco,* 66 Cal. 492, 56 Am. Rep. 109, 6 Pac.

317; *Board of Commissioners, etc.,* v. *Adler,* 69 Colo. 290, 194 Pac. 621; *United States* v. *Lynah,* 188 U. S. 445, 47 L. Ed. 539, 23 Sup. Ct. Rep. 349 (see, also, Rose's U. S. Notes); *Chicago* v. *Taylor,* 125 U. S. 161, 31 L. Ed. 638, 8 Sup. Ct. Rep. 820; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166, 20 L. Ed. 557; and *United States* v. *Cress,* 243 U. S. 316, 61 L. Ed. 746, 37 Sup. Ct. Rep. 380—which hold generally that liability exists to compensate the land owner whose property is taken or damaged for public use, "when he is consequentially injured by the work done, whether it is done carefully and with skill, or not" (*Reardon* v. *City and County of San Francisco, supra*), from which plaintiff deduces that liability exists in the case at bar upon the implied contract resulting from our constitutional provision concerning the exercise of the power of eminent domain to compensate her for the consequential damage to her property.

These cases hold that the condemnor is liable to make compensation for property taken or damaged in the exercise of the power of eminent domain, and are instances of assessments of damages made after the appropriation was actually completed. But in all of them it appears that the taking or damage for which compensation was required to be made was the necessary result of the appropriation as made, being more or less inseparably connected with it, and that the taking or damage was of a permanent character. The fact that the works may have been in some respects negligently constructed was not supposed, however, in the instances where negligence was charged or shown, to affect the rights of the parties, for the reasons, doubtless, that the land owner was just as much hurt by an appropriation so characterized as he would be by acts free from negligence, and because the condemnor would not be permitted to defend by pleading his own wrong. These decisions do not di-

rectly answer what we take to be the dominant inquiry in this case, which is: Was the negligent act of the state in filling the north approach in itself an act of appropriation under the power of eminent domain, or so connected with such an act as to impose liability upon the state to pay just compensation for the damages resulting therefrom?

We think the general rules enunciated by the authorities concerning the elements of damages in cases where the damages are assessed before, and where they are assessed after, the appropriation, may profitably be noted. The authorities are unanimous to the effect that when the damages are assessed before the taking, nothing can be included for wrongful or negligent acts upon the theory that they may occur, but the damages are limited to such as necessarily arise from a lawful taking and a proper construction and operation of the improvement. Lewis on Eminent Domain, 3d ed., § 714; *Norfolk & W. R. Co. v. Carter*, 91 Va. 587, 22 S. E. 517–519; *Cleveland, C., C. & St. L. Ry. Co. v. Smith*, 177 Ind. 524, 97 N. E. 164–172; *Utah Lake Irr. Co. v. Jensen*, 49 Utah, 19, 161 Pac. 677; *Denniston v. Philadelphia Co.*, 161 Pa. 41, 28 Atl. 1007; *Richardson v. Centerville*, 137 Iowa, 253, 114 N. W. 1071; *Pittsburg etc. Ry. v. Gilleland*, 56 Pa. 445, 94 Am. Dec. 98; *Hord v. Holston River R. Co.*, 122 Tenn. 399, 19 Ann. Cas. 331, 135 Am. St. Rep. 878, 123 S. W. 637.

The reason for the rule is that damages cannot be allowed for an injury which the law presumes will not be inflicted. No compensation based on such a presumption of negligence or wrongdoing could ever be tolerated by the law (*Norfolk & W. R. Co. v. Carter, supra*); and "though consequential injuries may be anticipated and compensated, those originating from carelessness or neglect, as they cannot be foreseen, neither can the damages resulting from them be in

advance measured or provided for." *Edmondson* v. *Pittsburgh, M. & Y. R. Co.,* 111 Pa. 316, 2 Atl. 404–407.

But where the damages are assessed after the works are actually constructed, a different rule applies:

"If the works are built before the assessment of damages is had, the damages should be assessed on the basis of the works as constructed, even if improperly constructed, for the condemnor should not be allowed to assert its own wrong." Lewis on Eminent Domain, § 714, and cases cited.

In the Adler case, *supra,* for example, the condemnee whose lands were flooded by the works was permitted to abandon in the appellate court the charge of negligence in their construction as not necessary to his cause of action.

As we have noted, the cases cited by plaintiff are not authority for the proposition that the liability to pay the just compensation required by the Constitution to be made to a land owner whose property is taken or damaged for public use arises from the commission of a tortious act unconnected with the appropriation of the property.

In the case at bar the acts of the state asserted to have caused the damage to plaintiff's land are entirely disassociated from the original appropriation, as we now proceed to show.

In this case the evidence does not disclose at what time a small bridge on the north approach, which was superseded by the fill spoken of, was built, nor that this north approach was not a solid embankment at the time of original construction. We do know, however, that the bridge over the stream was built in 1909–10 by the territory, and has since been continuously maintained by territory and state for the purpose of a public highway. If, as insisted by plaintiff, the characterization of the act of the state as being

"negligent" or "unskillful" is to be treated as surplusage, and the act alone considered, it is difficult to see how plaintiff can have any cause of action. On the other hand, if (as the complaint alleges and as was contended by plaintiff in the court below) the making of the fill was a negligent and unskillful act, causing a consequential damage to plaintiff, it is plain that it had no connection with the appropriation as originally made. And for a taking or injury not resulting as a consequence of the use of a privilege arising from the right of eminent domain, there is no liability to pay compensation as guaranteed by the Constitution. *Edmondson* v. *Pittsburgh, M. & Y. R. Co., supra.* The making of the fill constituted no new use of the state highway, or new appropriation, but was a mere act of repair in aid of public travel and to conserve the right of way. It was therefore a lawful act for the doing of which responsibility could not arise for any injurious consequence thereof, unless carelessly, negligently, or maliciously done: *Pittsburg etc. Ry. Co.* v. *Gilleland, supra.* In the case of *Delaware, Lackawanna & W. R. Co.* v. *Salmon,* 10 Vroom (39 N. J. L. 299), 23 Am. Rep. 214–225, it is said:

"It [the condemnation] will not exclude the recovery of damages for injuries resulting from the unskillful or improper construction of the road, or negligence in operating it. If the subsequent injury results from negligence, or the want of skill in executing the work, or from doing some wrongful or unauthorized act, or omitting what the law requires to be done in operating the railroad, the remedy by action remains, notwithstanding the conveyance or condemnation"—citing cases.

And as was said in *Chicago, R. I. & P. Co.* v. *Andreesen,* 62 Neb. 456, 87 N. W. 167, of the duties of the condemnor, a railroad company:

"It is universally held to be the duty of a railroad company, when its right of way passes over a stream of running water, to so construct its roadbed as to carry off the water of the running stream; and any failure to perform this duty, on account of imperfect culverts, or any other means of defective drainage, which causes the water to flow back upon the lands adjoining the right of way, is actionable negligence."

And the cause of action for injuries thus caused does not arise until the injury is done. Id. Further authorities to these propositions are: *Cleveland, C., C. & St. L. Ry. Co.* v. *Smith, supra; Edmondson* v. *Pittsburgh, M. & Y. R. Co., supra; Pittsburg etc. Ry.* v. *Gilleland, supra; Norfolk & W. R. Co.* v. *Carter, supra; Fremont, E. & M. V. R. Co.* v. *Whalen,* 11 Neb. 585, 10 N. W. 491; *Stork* v. *City of Philadelphia,* 195 Pa. 101, 49 L. R. A. 600, 45 Atl. 678; and notes in 19 Ann. Cas. 331, to *Hord* v. *Holston River R. Co., supra,* and that case; section 240, Lewis on Eminent Domain.

It is not, of course, contended that negligence can be directly imputed to a sovereign state. If a recovery is to be had in this case, it must therefore be based on the negligence of the officers, agents, or servants of the state for which the state is responsible under the substantive law, on the principle of *respondeat superior.*

It was held by this court, in the case of *State* v. *Sharp,* 21 Ariz. 424, 189 Pac. 631, that the state is not liable to respond in damages for the negligent acts of its agents, servants, or employees, and that in consequence of its sovereignty it is immune from prosecution in the courts, and from liability to respond in damages for negligence, except in those cases where it has expressly waived immunity or assumed liability by constitutional or legislative enactment. The court in that case, in considering the argument of counsel that the state had waived immunity and assumed lia-

bility for the negligence charged in the complaint by virtue of paragraph 1791 of the Civil Code of 1913, which permits suits to be brought against the state on claims for contract or for negligence, when disallowed by the state auditor, held that by such section no cause of action was created which did not theretofore exist, and that the effect of the act was merely to give a remedy to enforce a liability where the liability under the general principles of substantive law existed. It was said:

"Immunity from action is one thing; immunity from liability is another; hence the state does not waive its immunity from liability for the negligence of its agents, servants, or employees by a statute conferring jurisdiction only upon the court."

As was said in the case of *Davis* v. *State,* 30 Idaho, 137, Ann. Cas. 1918D, 911–915, 163 Pac. 373:

"There is no statute whereby this state has assumed a liability for the negligence or misfeasance of its officers or agents, and we find no established principle of law sustaining such a liability in the absence of such statutory assumption. No consideration of hardships to be avoided would justify a court in abrogating established principles of substantive law to create a liability not so assumed. To change substantive law is the province of the legislature, not of the courts."

See, also, *Billings* v. *State,* 27 Wash. 288, 67 Pac. 583.

As the evidence does not establish a cause of action against the state, the judgment is reversed, and the cause remanded to the lower court, with instructions to dismiss the cause.

ROSS, C. J., and McALISTER, J., concur.